ULSTER COUNTY.—HON. ALTON B. PARKER, SURROGATE.—
April, 1881.

## EWEN *v*. PERRINE.

*In the matter of the probate of the will of* GEORGE
W. EWEN, *deceased.*

It is not influence by a beneficiary, but undue influence, amounting to moral coercion, that will vitiate the act of a testator.

The burden of proving undue influence on the part of beneficiaries in a will rests upon contestant, where it appears that testator was of sound mind at the time of its execution.

Evidence of expressions of testamentary purpose, by a testator, are of great weight in enabling the court to determine whether a will is the result of undue influence.

The decedent, who died in May, 1880, aged eighty-five years, leaving him surviving a sister and nephews and nieces, by his will gave all his property to Mr. and Mrs. P., persons not related to him, with whom he had boarded for years. The will was executed with due formalities, the testator being of sound mind, though in feeble health at the time. There was no direct evidence of undue influence, although it was shown that the beneficiaries had abundant motive and opportunity to exert such influence, and their conduct impressed the court that they would not have deemed it wrong to influence testator to give them his property. The character and conduct, on the stand, of some of proponent's witnesses, also aroused suspicion that the whole truth had not been proved. But testator gave instructions for the will to the scrivener, they being alone at the time, and each of the subscribing witnesses, one of whom was a physician, testified positively to the facts of execution, and that testator was of sound mind and not under restraint. It also appeared that, during three years preceding his death, testator had repeatedly announced his intention to make the disposition of his property effected by the will.

*Held*, that it was not the province of the court to dispose of decedent's property in accordance with its notions of justice, nor could it deal with suspicions of undue influence not shown to have been exercised; that the proponents had made out a strong affirmative case, which contestants had not overthrown; and that the petition for probate should be granted.

THE decedent died May 12, 1880, leaving him sur-

viving a sister and several nephews and nieces, none of whom ever resided in the city of Kingston. After his death, Marius D., and Sarah A. Perrine, with whom he had boarded for a number of years, presented for probate as the last will and testament of deceased, a paper purporting to give, devise and bequeath all of his property to them. Further facts appear sufficiently in the opinion.

A. H. VAN BUREN and CHARLES A. FOWLER, for proponents.

SCHOONMAKER & LINSON, for contestants.

THE SURROGATE.—The evidence shows that the will was executed with the formalities required by statute. It also shows that the testator was, at the time of making his will, a person of sound mind. The only ground upon which the contestants now oppose the probate of the will is that undue influence was exercised over the testator, by the beneficiaries of the will.

We shall consider, then, before examining the evidence, first, what constitutes undue influence, and second, which side has the burden of proof.

The court says, in Newhouse v. Godwin (17 Barb., 236): "The mere fact that the mind of the testator has been influenced by the arguments or persuasions of the persons principally benefited, however indecorous, indelicate or improper they may be, will not, ordinarily, in the absence of fraud, vitiate a will;" in Blanchard v. Nestle (3 Denio, 37), that "a person has a right by fair argument or persuasion to induce another to make a will, and even to make it in his own favor;" and in Kinne v. Johnson (60 Barb., 69), that "the influence arising from gratitude, affection or esteem, is not undue."

Many other authorities might be cited, but these are sufficient to establish the proposition that it is not sufficient to vitiate a will, to show that the beneficiary has undertaken to fairly influence the testator to make a will in his behalf; in other words, that it is not *influence by the beneficiary* that vitiates the act of the testator, but undue influence, amounting to moral coercion, which restrains independent action and destroys free agency; or that, by importunity which he was unable to resist, the testator was constrained to do that which was against his free will and desire (Children's Aid Society *v.* Loveridge, 70 *N. Y.*, 387).

The burden of proving that the execution of a will, in favor of the beneficiaries, was procured by undue influence, rests upon the contestants, where it appears that it was duly executed by a person of sound mind at the time of the execution (Tyler *v.* Gardiner, 35 *N. Y.*, 559). There is no evidence in this case, showing that either Perrine or his wife ever asked George W. Ewen to make a will in their behalf, and, in the absence of direct testimony showing that the beneficiaries used undue influence in procuring the making of the will in their favor, it is the duty of the court to examine all the circumstances in the case, to see if they show affirmative facts from which such influence can be inferred. The evidence shows that both of the beneficiaries had abundant opportunity to exert undue influence, but does the evidence show facts from which the court can infer that they did use it? The testator by his will ignores, entirely, his relatives, and gives all of his property to the people with whom he boarded, and apparently without any adequate

reason for it.  By so doing he seems to have acted unjustly and unnaturally.

It must be borne in mind, however, that it is not the province of the court to dispose of a decedent's property according to the court's notions of right and justice; but, on the contrary, every person has a right to make such a disposition of his property as he chooses, and full effect must be given to the intentions of the testator, where it appears that the will has been duly executed, that the testator at the time of execution was *compos mentis*, and that the making of the same was his own independent act.

It has been frequently held that the fact, that the will gives all of the property of the testator to persons not related to him, does not raise an inference of undue influence (Deas *v.* Wandell, 1 *Hun*, 120).  George W. Ewen, at the time of making his will, was about eighty-five years old, and was in feeble health, and, it is claimed by the contestants, was in such a condition, both physically and mentally, as to make him dependent upon some one, and consequently could have been easily induced, by those by whom he was surrounded, to make a will in their favor.  While it is true that he might have been persuaded, by reason of his age and feeble health, to do an act he would not have done otherwise, I am unable to find any fact from which the inference can be drawn that he was thus influenced by the beneficiaries.  The evidence of old age, feeble mind and body, considered alone and apart from any other fact, does not even raise a presumption against the will.  In Horn *v.* Pullman (72 *N. Y.*, 269), the court says that " there is no presumption against a will, because made by a person of advanced

age, nor can incapacity to make a will be inferred from an enfeebled condition of mind or body." If the testator has sufficient intelligence to comprehend the condition of his property, his relation to those who are, or may be, the objects of his bounty, and the scope and meaning of the provisions of his will, and if it is his free act, it will be sustained. The question in all such cases is, simply,—was the will the free act of a competent testator? The fact that its provisions were inequitable and unjust furnishes no ground for disturbing it.

Dr. Shafer, the only physician examined, testified that he was present at the time of the execution of the will; that Ewen's mental condition was sound. The witnesses to the will are Augustus H. Van Buren and Dr. Levi Shafer. Mr. Van Buren testified that he wrote the body of the will at his office, took the paper to the house where Mr. Ewen was living, met Dr. Levi Shafer there, and together they went into the room occupied by Mr. Ewen; found him sitting in a chair; "he spoke to us, and we to him; I asked him if he was ready to execute the paper he desired me to draw; he said 'Yes'; I read the will over to him twice, and then handed it to him; he held it for some time, read it over, and then signed it; Mr. Ewen then said, 'Gentlemen, I declare this to be my last will and testament, and request you and the doctor to sign as witnesses;' which we did; Mr. Ewen was present when we signed. He was sound mentally, and was under no restraint." The witness also states that no one else was present in the room on that occasion, aside from Mr. Ewen, Dr. Shafer and himself.

Dr. Shafer, the other subscribing witness, testified that, at the time of the execution of the will, he entered

Mr. Ewen's room and found him sitting in a chair, and that, after making some general remarks about his health, "Mr. Van Buren proceeded to read the will ; he read the will aloud; Mr. Ewen then took the paper in his hand and held it some little time, and then signed it, after which he asked Van Buren and myself to affix our names ; he said the paper was his last will and testament, and we signed our names as witnesses to the transaction ; no one was in the room while I was there except Ewen, Van Buren and myself. His mental condition was sound, and he was not under any restraint."

At the time of the execution of the will, therefore, it appears that neither of the beneficiaries was present to exercise any restraint over him ; and his physician testifies that he was at that time mentally sound, and not under any restraint. There is no evidence in the case, as to his mental condition on that day, aside from the testimony of the subscribing witnesses. It is clear that this testimony, considered alone, establishes affirmatively that the will was duly executed, that the testator was of sound mind, and that the making of the will was his own free and independent act.

The age of Mr. Ewen, his feeble condition, the fact that he boarded with the Perrines, the abundant motive and opportunity of the beneficiaries for influencing him to give them his property, the fact that their conduct impresses the court that they would not consider it morally wrong to exert such influence if necessary, and the character and conduct, while on the stand, of some of the witnesses for the proponents, excite the suspicion that perhaps the whole truth has not been proven ; that there may have been much more done by the beneficia-

ries in bringing about this result than appears on this contest. But the court cannot deal with suspicions ; and these facts, together with the other circumstances proven, are not sufficient to warrant or justify the court in finding that they overcome the positive testimony of the subscribing witnesses.

The testimony of Mr. Carter, John W. Kerr, Mrs. Decker, Mrs. Thompson and Andrew Bostwick shows that he had stated to different persons, during the three years preceding his death, that he intended to give his property to Mr. and Mrs. Perrine when he had done with it. This evidence indicates strongly that the disposition which he finally made of his property had been in contemplation for a long time. Evidence of the testamentary wishes of a testator have always been considered by the courts as having great weight, in considering whether or not the making of a will was the free and independent act of the testator, or whether the same was the result of undue influence. In Wilson *v.* Moran (3 *Bradf.*, 172), the court says that "the probability of the will being the free act of the testator is sustained also by testimony as to the testamentary wishes, orally expressed at other periods and to other parties."

A very large amount of evidence has been taken on this contest, but I do not consider it necessary to refer to it further, as there is positive testimony showing that, for nearly three years, the testator had stated that it was his intention to give his property to the Perrines when he had done with it; that, over a month before the execution of the will, he had so disposed of his moneys in the savings bank that the Perrines would receive it after his death ; that he gave to Mr. Van Buren the necessary

instructions for drawing the will before the execution of it, and that they were alone at the time, and that he finally executed it in the manner described by the subscribing witnesses. This evidence, considered with the testimony of Dr. Shafer, that, at the time of the execution of the will, he was mentally sound and not under any restraint, makes a strong affirmative case for the proponents. The suspicious facts and circumstances shown by the contestants are not sufficiently strong to overcome this positive testimony, and the proponents are therefore entitled to have the will admitted to probate.

Decreed accordingly.