## In the Matter of the Probate of the Last Will of JACOB MONDORF, Deceased.

A will prompted by gratitude cannot, in the case of a perfectly competent testator, and in the absence of evidence of fraud, imposition, constraint or coercion, be said to have been obtained by undue influence, simply from the fact that all of the testator's estate is given to a stranger in blood.

The fact that the relations of the testator with the object of his bounty, a woman, are meretricious, does not invalidate the will.

*It seems* that where such relationship is shown to have existed, all the circumstances attending the execution of the will should be carefully scrutinized.

Where the probate of a will is, in good faith, but unsuccessfully, contested, it is within the discretion of the surrogate to allow costs to the contestant (Code of Civil Pro. § 2558), and his refusal so to do is not error.

(Argued June 26, 1888; decided October 2, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 10, 1886, which affirmed a decree of the surrogate of Kings county, admitting to probate an instrument purporting to be the last will of Jacob Mondorf, deceased.

The material facts are stated in the opinion.

*Hugo Hirsh* for Elizabeth Mondorf, appellant. The legislature has seen proper to prescribe certain legal requisites to the due execution of a will, all of which must be substantially complied with or the will is void in law. The onus of satisfying the court that these forms were complied with lies upon the party seeking to establish the will. (*Chaffee* v. *Bap. Miss. Soc.*, 10 Paige, 92; *Remsen* v. *Brinckerhoff*, 26 Wend. 331; *Van Hanswyck* v. *Weise*, 44 Barb. 494; *Bagley* v. *Blackman*, 2 Lans. 41; *Hunt* v. *Mootrie*, 3 Bradf. 322; affirmed, 26 Barb. 252; *Van Hooser* v. *Van Hooser*, 1 Redf. 365; *Brown* v. *De Seldin*, 4 Sandf. 10; 44 Barb. 494.) The testator having left his entire estate to a complete stranger, with whom, however, his relations had been, for several years, as intimate and confidential as that existing between husband and wife, and patient and nurse, the law will presume that undue influence had been used in its execution. (*Marx* v. *McGlynn*, 88 N. Y. 371; 1 Jarman on Wills, 36 note 1; *Demmert* v. *Schnell*, 4 Redf. 409; Abb. Trial Ev. 720; *Tyler* v. *Gardiner*, 35 N. Y. 559, 595; *Lansing* v. *Russell*, 13 Barb. 510; *Harrell* v. *Harrell*, 1 Duv. [Ky.] 203; Redf. Am. Cases on Law of Wills, 505n; *Mowry* v. *Silber*, 2 Bradf. 133; *Harvey* v. *Gullins*, 46 Mo. 147; *Boyd* v. *Boyd*, 66 Pa. 283; *Crispell* v. *Dubois*, 4 Barb. 393; *Vreeland* v. *McClelland*, 1 Bradf. 393; *Limburger* v. *Ranch*, 2 Abb. [N. S.] 279; *Lee* v. *Dill*,

11 Abb. Pr. 214; *Lake* v. *Ranney*, 33 Barb. 49; *In re McGuire*, 1 Tuck. 196; *Kessinger* v. *Kessinger*, 37 Ind. 341; *Breed* v. *Platt*, 18 Pick. [Mass.] 115; Redf. Leading Cases, 517; *In re Welsh*, 1 Redf. 244; *Griffin* v. *Robbins*, 3 Madd. 19; 1 Redf. 245.) A testator has a right to change radically and arbitrarily the manner of disposition of his property, and, in the absence of fraud, courts will sustain his action in this respect; but when, according to the ordinary motives which operate men, we find an unnatural change made in a sick man's will, and one apparently contrary to his previous fixed and determined purpose, it is the duty of courts to scrutinize closely the circumstances with a view of ascertaining whether the act was free, voluntary and intelligent. (*McLaughlin* v. *McDevitt*, 63 N. Y. 217: *Children's Aid Society* v. *Loveridge*, 70 id. 402; 27 Moak [Eng.] 417; *Delafield* v. *Parish*, 25 N. Y. 34, 58; *Rollwagen* v. *Rollwagen*, 63 id. 504, 522; *Tyler* v. *Gardiner*, 35 id. 559, 592; *Lake* v. *Ranney*, 33 Barb. 49; *Lanton* v. *Williams*, 2 Curtis Ecc. 530; *Marvin* v. *Marvin*, 3 Abb. Ct. App. Dec. 192; *Reynolds* v. *Root*, 62 Barb. 250; *Forman* v. *Smith*, 7 Lans. 493; *Lee* v. *Dill*, 11 Abb. 214; *Dean* v. *Nagley*, 41 Penn. St. 312; *Brick* v. *Brick*, 66 N. Y. 149; *Julke* v. *Adam*, 1 Redf. 454; Lawson on Presumptive Evidence, 126; *Cudney* v. *Cudney*, 68 N. Y. 152.) Undue influence need not be shown to have been exerted at the time of making the will. (*Fulton* v. *Andrew*, L. R., 7 H. of L. 448; *S. C.*, 12 Eng. R. [Moak] 76; *Davis* v. *Calvert*, 5 Gill & J. 269; 25 Am. Dec. 282; Red. Cas. Wills, 420; *Roberts* v. *Trawick*, 17 Ala. 55; 52 Am. Dec. 164; *Bunyard* v. *McElroy*, 21 Ala. 316; *Taylor* v. *Wilburn*, 20 Mo. 306; Red. Am. Cas. Wills, 412; *Calhoun* v. *Jones*, 2 Redf. 34; *Phillips* v. *Van Kleet*, 22 Hun, 542, 543, 544; *Demmert* v. *Schnell*, 4 Redf. 409.) The fact that testator lived several months after the making of this alleged will has no bearing upon the question of undue influence. (*Rollwagen* v. *Rollwagen*, 63 N. Y. 504, 519, 520; 1 Jar. on Wills, 39; *S. C.*, 3 Hun, 121; *Blewitt* v. *Blewitt*, 4 Hagg. 410; *Crispell* v. *Dubois*, 4 Barb. 393; *Lake* v. *Ranney*, 33 id. 49; *Tyler* v.

*Gardiner*, 35 N. Y. 559.) It would be improper to set aside a will of the husband in favor of his wife, on the ground of influence, importunity or undue advantage taken by the wife, though it should appear that she possessed a powerful influence over his mind and conduct in general concerns of life; unless there should be evidence that such influence was exerted in a special degree to procure a will peculiarly acceptable to her, and to the prejudice and disappointment of others, naturally expecting the testator's favor. Such latitude of influence should, it seems, be allowed only in favor of the wife, or perhaps of a child; it certainly should not be extended to a woman not the wife, with whom the testator has been consorting in shame. (*Kessinger* v. *Kessinger*, 37 Ind. 341; *Denton* v. *Franklin*, 9 B. Monroe, 28; 1 Jar. on Wills, 35, n. 1; *Dean* v. *Nagley*, 41 Penn. St. 312; *Gardiner* v. *Gardiner*, 34 N. Y. 155.) It is not the duty of the court to strain after probate, nor in any case to grant it where grave doubts remain unremoved, and great difficulties oppose themselves in so doing. (*Delafield* v. *Parish*, 25 N. Y. 9–35; *Lanton* v. *Williams*, 2 Curt. 530; *Rollwagen* v. *Rollwagen*, 63 N. Y. 517.) Parol evidence of the revocation of a will is inadmissible. (*Jackson* v. *Kniffen*, 2 Johns. 31; cited in 15 id. 292; 6 Cow. 382; 11 N. Y. 162; 10 Barb. 16.)

*Theo. J. Geisler* for collateral heirs, appellants. The rules of evidence in relation to proving the execution and contents of lost instruments remain unaffected, and parties acquiring rights under a lost or destroyed will may establish these rights by the same kind of evidence as was allowed prior to the enactment providing for the probate of a lost will. (*Chapman* v. *Rogers*, 12 Hun, 34; *Estate of Colligan*, 5 Civ. Pro. Rep. 198.) It is the imperative duty of the surrogate, before admitting a will to probate, to inquire particularly into all the facts and circumstances. (Code Civ. Pro. § 2622; *Nelson* v. *McGiffert*, 3 Barb. Ch. Prac., 158.) The slightest proof of loss of a will is sufficient to entitle a party to give secondary evidence of its contents. (*Jackson* v. *Root*, 18 Johns. 74;

*Dan* v. *Brown*, 4 Cow. 491; *Jackson* v. *Frier*, 16 Johns. 193.) Though the proponent holds the affirmative in showing compliance with the statute, this may be inferred from the circumstances without any direct testimony, and it is not necessary for the witness to remember through a number of years and be able to state affirmatively the several matters required to be done. (*Peck* v. *Cary*, 27 N. Y. 9; *Darling* v. *Arthur*, 22 Hun, 84; *Chase* v. *Ketteridge*, 11 Allen, 49; *Willis* v. *Mott*, 36 N. Y. 485.) The will executed by deceased in 1878, having contained a revocation clause, the will of 1868 was rendered absolutely nugatory. The express revocation could thus be proved, notwithstanding the disposing provisions of that will were not susceptible of proof. (Redf. Sur. Prac. 191 [Last ed.]; *In re Thompson*, 11 Paige, 453; *Day* v. *Day*, 2 Greene's Ch. 549, 557; *Pinckney's Estate*, 1 Tuck. 436.) The evidence on behalf of the proponents of will of 1885, as to a pretended settlement between deceased and his wife during his lifetime, was irrelevant and cannot in the slightest way have any bearing upon the next of kin. (*Delafield* v. *Parish*, 25 N. Y. 34, 58.)

*John H. Kemble* for respondent. The reading of the entire will, containing a full attestation clause, in the presence of the testator and of the witnesses, the testator assenting thereto and saying he wanted it executed, was a due publication of the will and request to witness the same. (*Lane* v. *Lane*, 95 N. Y. 494–500; *Brown* v. *Clarke*, 77 id. 369–372; *Rugg* v. *Rugg*, 83 id. 592; *Dack* v. *Dack*, 84 id. 663–665; *In re Pepoon*, 91 id. 255; *Gilbert* v. *Knox*, 52 id. 125.) The provision made by the testator for his wife before separation, together with his after declarations, show that there was no influence. (*Cudney* v. *Cudney*, 68 N. Y. 148.) Except as prohibited by law, a competent testator, free from undue influence, may make whatever will he chooses, though unjust and unreasonable. (*Seguine* v. *Seguine*, 4 Abb. Ct. App. Dec. 191.) Where the probate of a will is contested on the ground of undue influence, and it appears the testator had testamentary

capacity, a present knowledge of the contents of the will, and that its execution was surrounded by all the guards the statute has prescribed to prevent fraud and imposition, such will can only be avoided by proof of influence amounting to force or coercion, and the burden of proving this is upon the party making the allegation. (*In re Will of Martin*, 96 N. Y. 193.)

EARL, J. Jacob Mondorf died in the city of Brooklyn on the 22d day of July, 1885, having made two wills, one dated May 26, 1868, and the other dated January 14, 1885. By the former will he gave all his estate to his wife, and by the latter he gave it all to Mrs. Juliana Schaumburg and revoked all former wills. He left no issue. He and his wife became estranged, and in January, 1878, they separated and thereafter lived apart. After their separation he lived in the family of Mrs. Schaumburg, who was a widow with several children.

One of the executors named in the later will presented the same for probate, and the testator's widow contested the probate, and presented the first will for probate; and certain of his heirs contested the probate of both wills. The surrogate refused probate to the first will and admitted the later one to probate.

There can be no question that the will of 1885 was executed with all the formalities prescribed by law. It was drawn by an attorney of the testator's own selection, and he gave the directions for drawing it. After it was drawn it was read to him and he pronounced it right. It was again read in his presence, including the full attestation clause, to the witnesses. He declared it to be his will in the presence of the witnesses, and they subscribed it at his request, in his presence, and in the presence of each other. In April afterward he called at the office of the attorney and paid him for drawing the will.

There can be no doubt of the entire competency of the testator at the time to make a will. It is clear that he was in the entire possession of his mental faculties, that he fully comprehended the effect of the will, and that it expressed his deliberate purpose formed a long time before its execution.

The will is mainly assailed on the ground of undue influence. There is not the least evidence that Mrs. Schaumburg ever attempted to influence him in the disposition of his property. But undue influence is sought to be inferred from his relations with her, and the fact that he gave her, a stranger in blood, all his estate. The evidence tends to show that he had at some time made a division of his property with his wife, and that she had more property than he had.· He complained of her refusal to live with him, and of her bad treatment of him. He boarded and lived in the family of Mrs. Schaumburg for several years, and was kindly cared for by her when sick and feeble, needing attention, and for such kindness he frequently expressed his gratitude. While there was some evidence that the relations between him and her were meretricious, the surrogate refused to find that they were.

This will was prompted by gratitude, and a will thus induced cannot, in the case of a perfectly competent testator, be said to have been obtained by what in the law is styled undue influence. There was no fraud, imposition, constraint or coercion.

The fact that he gave his wife nothing is accounted for by their unfriendly and hostile relations, and the previous provision made for her in the division of his property.

Even if his relations with Mrs. Schaumburg were meretricious, the law does not on that account condemn a will made in her favor. Where such relations exist all the circumstances attending the execution of a will which may be shown to have been induced thereby will be carefully scrutinized; but the right of a competent testator to make any disposition of his property which pleases him, although it may be unjust and unnatural, will not be curtailed. (*Seguine* v. *Seguine*, 4 Abb. Ct. of App. 191; *Horn* v. *Pullman*, 72 N. Y. 269; *Marx* v. *McGlynn*, 88 id. 357; *In re Will of Martin*, 98 id. 193.)

We do not perceive that the appellants have any reason to

complain of any of the rulings of the surrogate upon questions of evidence.

The widow complains that the surrogate did not allow her costs. He did not impose costs upon her, and whether or not he should allow her costs rested in his discretion under section 2558 of the Code. While under subdivison 3 of that section, if he found her contest was in good faith, he could have awarded her costs to be paid out of the estate, he was not bound to.

We are of opinion, therefore, that the judgment should be affirmed, with costs against all of the appellants.

All concur.

Judgment affirmed.