## In the Matter of Will of SALLY MOON.

*Supreme Court, Third Department, General Term, December* 11, 1889.

*Will. Undue influence.*—Where a stranger in blood or affinity holds the dominating influence of master to servant towards the testatrix who is aged, undecided and enfeebled in body and mind and is suffering under debility soon to end in death, and is himself present and assisting in the testamentary act which makes him the legatee, he encounters a suspicion which he should be prepared to remove, or else give place to that succession which his seeming interruption has apparently displaced.

Appeal from the decree of the Rensselaer county surrogate, admitting to probate an instrument purporting to be the last will and testament of Sally Moon, deceased.

Sally Moon, the alleged testatrix, was an unmarried female seventy-seven years of age, and for about twenty years immediately before her death had been employed in the hosiery mill of Andrew B. Knowlson, the sole beneficiary under her alleged will. She became ill at the mill about six weeks before her death and was thereafter cared for at the house of her grandnephew George Lamphere. The certificate of her death filed with the register of vital statistics, which by statute is made *prima facie* evidence, states that apoplexy was the chief cause of her death, and asthma the other cause. Testimony was given tending to show that she did not have apoplexy at the date of the execution of the will. The forewoman of the room in the mill in which Miss Moon had been employed was Mrs. Griggs ; between them the relations were very friendly.

On the 5th of December, 1887, the date of the alleged will, Lamphere asked Mrs. Griggs to call at his house and see Miss Moon.

She called, and Lamphere then said to her that he did not think Miss Moon could recover, and added, " I want you to have Aunt Sally make a will; I have been talking to her quite a while." Mrs. Griggs thereupon sent Lamphere for Knowlson. Knowlson came. The question then arose between Mrs. Griggs, Knowlson and Lamphere whether Miss Moon had any property, and upon the question being asked her she said she had two bank books and a twenty-dollar gold piece up stairs in her trunk.

Knowlson and Lamphere went up stairs and found them as she had stated.

Mr. Snyder, the draftsman of the instrument, was then sent for and he soon arrived. Miss Moon had been assisted to rise from her bed and was sitting in a chair. She took no part in any conversation except by answers to questions; she appeared to be quite ill and feeble. Mr. Snyder testified that sometimes questions had to be repeated. " She did not answer questions so very prompt." When Snyder came into the room someone said to Miss Moon that this was Mr. Snyder and that he had come to draw her will if she wanted him to do it. She nodded her head without remark. Lamphere then asked her to whom she wanted to leave her property. Lamphere testifies she answered " You," and that someone asked, " Do you mean A. B. ? " and she said " Yes."

Snyder and Mrs. Griggs testify that she answered "To Knowlson," and Snyder testifies that he then asked " To A. B." and she said she did. Knowlson suggested to Lamphere that he leave the room. He went out.

Knowlson then asked her what she wanted to leave to George, and she said " Nothing : " what to Nell, his baby, and she answered " Nothing." He then asked her what she wanted to do with her property, and she made no answer. Snyder then asked her if she wanted to will all her property to A. B. Knowlson, and she said " Yes," and he thereupon drew the instrument. He asked her about an

executor, and she assented to Knowlson. He read the completed instrument to her, and asked her if it was as she wanted it, and she assented. He asked the necessary questions respecting subscribing witnesses, and she assented to Mr. Snyder and Mrs. Griggs acting in that capacity. When in health she could write quite well, but now, at the suggestion of Snyder, she put her hand to the pen, and he guided it as she made her mark. She assented to the question whether she declared the instrument to be her last will and testament, and whether she requested Snyder and Mrs. Griggs to be the subscribing witnesses. She died two days afterwards. After the execution of the instrument several of her acquaintances called upon her, but she did not recognize them. Knowlson, the sole beneficiary of the will, was not of kin to her. She left nephews and nieces.

*Orin Gambell*, for appellants.

*Robert H. McClellan*, for respondents.

LANDON, J.—(After stating the facts as above.) The evidence is not very satisfactory as to the condition of the decedent's mind at the time of making the alleged will. She was seventy-seven years of age, was very ill and weak, being about to die, if not of apoplexy, at least of debility. If she had any desire to make a will she had not expressed it. Lamphere, her grandnephew, in whose house she was being cared for, wanted her to make a will in his favor. He seems to have been unsuccessful in obtaining any result, and he solicited Mrs. Griggs, her friend, to promote his wishes. Mrs. Griggs' mind reverted to Knowlson, the common employer of herself and Miss Moon. Knowlson was sent for. He came, and discovering that Miss Moon had some estate, such proceedings were thereupon had as resulted in this alleged will in his favor. Miss Moon did not make it without prompting, and evidently could not. Delafield *v.*

Parish, 25 N. Y. 9; Van Guysling *v.* Van Kuren, 35 Id. 70.

For twenty years and until disabled by her last illness she had sustained to Knowlson the relation of servant to master. He had no natural claim upon her bounty, and it does not appear that he had any other.  Her nephews and nieces were set aside in his favor.  She had no independent advice.  He was present when the will was drawn in his favor and took part in the conversation with Miss Moon about it.  No explanation is offered.  The question is thus presented whether this old woman, too indifferent or too torpid herself to manifest any inclination to make a will, too weak and feeble to participate in making it except as she was prompted and guided, was or was not unduly influenced by her master whom she had so long served.

We have no reason to think that the idea had ever occurred to her to bequeath her property to him until he appeared before her that day and began to question her about her will. The case strongly suggests the possibility that if she had any purpose of her own respecting her property she yielded it to what she supposed to be his desire; that she would not and could not withstand her old master.

The undue influence thus suggested is very subtle, but may be ample to accomplish its purpose.  A party, especially a stranger in blood or affinity, holding such a dominating influence over a testator, aged, undecided and enfeebled in body and mind, suffering under debility soon to end in death, and himself present and assisting in the testamentary act which makes him the heir, encounters a suspicion which he should be prepared to remove, or else give place to that succession which his seeming intervention has apparently displaced. Matter of Smith, 95 N. Y. 516; Marx *v.* McGlynn, 88 Id. 357, 370; Cowee *v.* Cornell, 75 Id. 91, 99; Tyler *v.* Gardiner, 35 Id. 559, 589.

We do not think these circumstances, which should be grouped and then considered, had their proper influence.

We conclude to reverse the decree of the surrogate and

send the issues involved in the probate of the instrument to a jury at the Rensselaer county circuit for solution. Costs of this appeal to be allowed the appellants out of the estate.

LEARNED, P. J., and PUTNAM, J., concur.

---

### NOTE ON " UNDUE INFLUENCE."

Undue influence, in order to avoid a will, must amount to a moral coercion, which restrains independent action and destroys free agency, or which, by such importunity as cannot be resisted, constrains the testator to do that which is against his free will and desire, but which he is unable to refuse or too weak to resist. Matter of White, 52 Hun, 613. It must not be the promptings of affection, the desire of gratifying the wishes of another, the ties of attachment arising from consanguinity, or the memory of kind acts and friendly offices, but a coercion produced by importunity, or by a silent, resistless power which the strong will often exercises over the weak and infirm, and which cannot be resisted, so that the motive is tantamount to force or fear. Id.

To render a will void for undue influence, the conclusion from the circumstances proved must be inevitable that the testator was reduced in his mentality to utter helplessness and succumbed to an influence which made the will that of some other person and not his own. Matter of Thorne, 26 N. Y. St. Rep. 240.

The burden of establishing that a will was procured by undue influence is upon the contestant. Van Orman v. Van Orman, 58 Hun, 606.

Undue influence, when relied upon to defeat a testamentary disposition, must be proved and not merely assumed to exist. Loder v. Whelpley, 111 N. Y. 239.

Undue influence cannot be presumed. Matter of Springsted, 55 Hun, 603.

Undue influence will not be presumed, but must be proved. Matter of Bartholick, 22 N. Y. St. Rep. 911.

The burden of proof rests on the draftsman of a will, who is a legatee, to snow the absence of fraud or undue influence. Id.

What proof sufficient, was stated in this case. Id.

No presumption of undue influence can be drawn from fact of inequality, in case of full proof of capacity. Matter of Lasak, 57 Hun, 417.

Fraud or undue influence cannot be inferred from selecting relative as recipient of bounty. Matter of Rosecrans, 52 Hun 615. Nor from selecting brother as executor. Id.

What constitutes undue influence, see Matter of Thorne, 26 N. Y. St. Rep. 240.

The appeal of wife and children to the love and solicitude of the testator is not undue influence.    Id.

Undue influence must be proved as any other fact.    Mason v. Williams, 53 Hun, 398.

As to what influence of a wife is not undue, see case last cited.

A person's wife and children have an undoubted right to warp his judgment and sway his will by appealing to his love for them and solicitude for their welfare, to the extent of making ample provision for them, even to bestowing all his estate upon them.    Matter of Thorne, 26 N. Y. St. Rep. 240.

The fact that the testator gave all his property to his wife is not a sufficient reason to set aside his will at the suit of his relatives.    Matter of Eilers, 29 N. Y. St. Rep. 58.

A daughter has no right to importune, annoy and distress her father to the extent of inducing him, in order to pacify her, to substitute in the will her wishes or her will in place of his own.    Matter of Bishop, 56 Hun, 648.

The circumstances of this case were held to warrant the submission of the question of undue influence to jury.    Id.

Prejudice and aversion to a child, created in the testator's mind by misrepresentations of his conduct towards another child, may be sufficient to affect the validity of the will, if they become the cause of ignoring him herein.    Matter of Budlong, 126 N. Y. 426.

Gross inequality, when no reason is suggested, may require explanation on part of the supporters of the will.    Id.

The fact that a will disinherits one of testator's children, is not alone evidence of undue influence or fraud.    Matter of Hall, 50 Hun, 606.

Harsh treatment by a sister furnishes sufficient reason for omitting her from the testator's will. Matter of Conner, 55 Hun, 606.

A will, which is prompted by the gratitude of a testator whose competency is unquestioned, cannot, in the absence of fraud, imposition or coercion, be considered as having been obtained by undue influence, simply from the fact that it omits his wife and children and benefits a stranger. Matter of Mondorf, 110 N. Y. 450.    A competent testator has a right to make any disposition of his property which pleases him, though it may be unjust and unnatural.    Id.

The rule that the circumstances surrounding the making of a will by a client in favor of an attorney calls for the largest degree of circumspection and vigilance to see that the act was in harmony with the views and wishes of the testator, and was not the result of influence exercised through the medium of the existing confidential relation, is only applicable where the testator is shown to have been dependent upon his attorney for information concerning the contents of the will; or where the testator was an infirm person and the provisions of the will are such as to create suspicion, or the circumstances under which it was executed are such as to lead to the inference of undue influence.    Matter of Soule, 22 Abb. N. C. 236.

The rules as to undue influence where a client gives a legacy to an

Note on "Undue Influence."

attorney who was also the draughtsman, stated. Matter of Soule, 19 N. Y. St. Rep. 532.

The burden of proof, in such case, is on the proponent to show the testator's understanding of the nature and consequences of the testamentary act. Id.

Where the sole beneficiary is the decedent's physician, and the decedent is of doubtful mental capacity and there is no evidence tending to show who originated the will, or whether the decedent ever gave instructions regarding it, or who, subsequently, had its possession, and the uncontradicted evidence tended to establish that it was in the handwriting of the beneficiary, the will, in Peck v. Belden, 6 Dem. 299, was refused probate.

The confidential relation of spiritual adviser to the testatrix does not create a presumption of undue influence. Matter of Hollohan, 20 N. Y. St. Rep. 150.

The draftsman or confidential adviser may be a legatee or executor of a will, where the testator has testamentary mental and physical vigor, without any presumption of fraud or undue influence. Matter of Sheldon, 40 N. Y. St. Rep. 369.

Confidential relations do not exist between a principal and agent employed to make investments in a distant state and pay over the income, such as to raise a presumption of undue influence. Id.

Inequality in legacies to collateral relatives does not show undue influence. Id.

Where the testatrix had independent advice concerning the testamentary disposition of her property, the mere fact that the principal legatee is her spiritual adviser will not raise the presumption of undue influence. Figueira v. Taafe, 6 Dem. 166.

The rule as to confidential relations does not apply in all its strictness, to gifts by will. Matter of Springsted, 55 Hun, 603.

Such relation does not exist between employer and housekeeper. Id.

Where a will is made by a servant bequeathing to her master's family a'l she has in the world, which consists merely of the wages due from her master, it challenges suspicion; and, when reinforced by the fact that the will is at variance with decedent's expressed intentions, both before and after the date of the will, and is likewise opposed to the dictates of nature and justice, the presumption is that it was the result of undue influence. Banta v. Willets, 6 Dem. 84.

A will, duly executed by a free, capable testator, cannot be rejected. Matter of Bennett, 53 Hun, 634.

Fair argument or persuasion is not undue influence. Matter of Birdsall, 34 N. Y. St. Rep. 626.

The facts were held, in Matter of Portingall, 60 Hun, 585, not to establish undue influence, see also, Matter of De Baun, 32 N. Y. St. Rep. 279; Matter of Bedell, Id. 1022; 53 Hun, 629.

The circumstances, in Matter of Liney, 34 N. Y. St. Rep. 700, were held to warrant an inference of undue influence. See also, Matter of Gray, 24 N. Y. St. Rep. 345.

The leaving of the will for fourteen years after its execution, unchanged and undisturbed, is proof of deliberate purpose, on the testatrix' part, in its execution. Matter of Harold, 50 Hun, 606.

The circumstances in Matter of Moon, 54 Hun, 639, were held to create such strong suspicion of undue influence as to require revocation of probate and sending such issue to be tried at circuit.