(Surrogate's Court, New York County. November 1, 1899.)

WILLS—UNDUE INFLUENCE.

> Testatrix left her home to live with C., as his mistress, who soon after employed a lawyer to draw a will for her, telling him in what terms she desired it, which left the income from her property to C. during life, on condition that he adopt a son she had by a former marriage. C. was present at the execution of the will. It was read, clause by clause, to testatrix, and her attention was called to the clause concerning her son; and the witnesses, whose characters were unimpeached, testified that she understood and approved it. *Held*, that probate could not be successfully resisted on the ground of undue influence.

Proceedings for probate of the last will and testament of Mabel Westerman. Motion that objections filed by contestant be overruled, and the will admitted to probate. Granted.

Edward R. Sandford, for proponent.

L. A. Gould, for contestant.

VARNUM, S. In this matter a motion was made at the close of the contestant's case that the objections be overruled and the will admitted to probate, upon which motion this decision is rendered. The decedent's will is contested on the usual grounds by her mother, as the general guardian of the decedent's only child, a boy about 5½ years old. The will seems to have been properly executed, and there is no proof that the decedent was not at the time of its execution of sound and disposing mind; and the only question, therefore, remaining to be considered by me is whether or not any undue

influence was exercised over her to procure the execution of the will. The decedent was a young widow, about 30 years old, with only one child, above referred to. It seems to be conceded that at the time of her death, and for many months prior thereto, she had been living with one Chevalier, as his mistress; and it appears by the evidence that said Chevalier had been divorced from his wife in this state, and was consequently prohibited from marrying again, under its laws. The decedent was by occupation a stenographer and typewriter, without other property than a one-sixth interest in the estate of her grandfather, recently deceased, which estate has not been yet settled, and the amount of which does not appear in evidence, although it seems that it consists of both real and personal property; and counsel concede that her interest does not exceed about $10,000 in value. She died of pneumonia on June 7, 1899; having, on the 4th day of June, four days before her death, executed the paper writing now propounded as her will. By its terms she gives her estate to her executors in trust to pay over the income therefrom to said Chevalier (designated in the will as the person to whom she was engaged to be married) for life, upon the express terms and conditions that he shall adopt decedent's son, Richard, and rear, provide for, train, and educate him as fully, carefully, and lovingly as if he was his own. In the event of Chevalier's death, or the failure of the trust, the property is given to said Richard.

It does not come within my power or jurisdiction as surrogate to decide as to the wisdom or propriety of such testamentary disposition by the testatrix, or, until the question shall have been brought directly before me, to decide as to the proper interpretation and construction or the legality of the provisions in the will. My present function is only to decide whether the will was executed in accordance with law, whether the testatrix had proper mental capacity to execute it, and finally whether it was executed under any undue influence, and hence did not properly express her personal desire and will. I have already passed upon the first two points, and, as to the third, I must confess that I can find no proof of undue influence. It appears that the decedent, despite the advice and remonstrances of her mother, and with full knowledge of facts reflecting seriously upon the morality and stability of the man Chevalier, including the proceedings in his own divorce suit and in another similar action, in which he was co-respondent, nevertheless deliberately left her mother's home to live with him as his mistress. As I have said in another case (In re Rand, 28 Misc. Rep. 465, 59 N. Y. Supp. 1082), it seems to be the law that meretricious relations are not necessarily proof of undue influence (In re Mondorf, 110 N. Y. 450, 18 N. E. 256). There is no proof of any cruelty, unkindness, or other objectionable treatment of the decedent by Chevalier, and no proof of his having interfered in the matter of the will, other than the admitted facts that he employed the lawyer to draw it, and told him what the decedent desired embodied in it, afterwards called another witness, and was present at the time of its execution. The lawyer, who was a subscribing witness, testifies that he read the will over to the tes-

tatrix, clause by clause, and that he specially called her attention to the clause as to the adoption of her child by Chevalier, and that she understood and approved of it. The latter statement is confirmed by the testimony of the other subscribing witness, and there is no evidence to throw any doubt upon the standing, character, and disinterestedness of these witnesses. They seem to have been acquaintances of Chevalier, but nothing more. This willful and wayward young woman, the decedent, seems to have deliberately, if unwisely, chosen Chevalier in preference to her family during her life, and no one had the right or power to prevent it; and it would seem that she intended, possibly with equal lack of wisdom, to continue this same preference after her death, through the medium of her will, and this court is equally powerless to prevent it. Seguine v. Seguine, 4 Abb. Dec. 191; In re 'Cleveland, 28 Misc. Rep. 369, 59 N. Y. Supp. 985. If Chevalier be, as claimed by the contestants, an unsuitable and improper person to act as guardian for the child or as his adopted parent, doubtless he can be prevented from so acting through some other proceeding in this or some other tribunal. A decree may be submitted admitting the will to probate.

Probate decreed.