(29 Misc. Rep. 724.)

In re HAMILTON'S WILL.

(Surrogate's Court, New York County. December, 1899.)

WILLS—PROBATE—CONTEST—UNDUE INFLUENCE.

    Testator, cutting off his wife and sister, devised all his property to a woman who was not a relative, but made his acquaintance and that of his wife about five years before his death, and continued on good relations with them for about three years, when the wife left home, and commenced

an action for separation. The relations of testator and his wife had been exceedingly unhappy for over ten years. He was a strong-minded man, and in vigorous health until he had the attack of pneumonia that finally resulted in death. After he had made his will the beneficiary gave up her position and removed to his home, and attended him during his sickness. *Held* that, though the will was unnatural, the evidence was sufficient to show that the testator was free from any undue influence, and understood the nature of his act at the time of its execution.

Proceedings to probate the will of John Hamilton, deceased, which was contested by his widow. Probate decreed.

William Arrowsmith, for proponent.

Thomas J. O'Neill, for contestant.

VARNUM, S. There is probably no exercise of the power of testamentary disposition that is more abhorent to our sense of justice and right than the case where a man, dying and leaving a widow, disinherits her by his will. Such action seems to violate every principle of the natural law and of common decency, and especially so when the husband selects and substitutes another woman as the object of his testamentary bounty. We all, however, in our own experience, have seen many cases of men, miserly, parsimonious, neglectful, and perhaps cruel to those of their own family and household, who expend the money which should be applied to the support and maintenance of the natural objects of their bounty, either in ostentatious charitable bequests, or, more frequently, in reckless extravagance, dissipation, gambling, or illicit relations. And yet, much as such actions may meet with our disapproval and censure, no question arises in our minds as to the right or power of any one to interfere with and check them; for we all recognize the fact that a man has an absolute legal right to do what he will with his own property, so long as there is no actual violation of the civil or criminal law. Clapp v. Fullerton, 34 N. Y. 197; Marx v. McGlynn, 88 N. Y. 371; Seguine v. Seguine, *42 N. Y. 669. Strangely, however, there seems to be a widespread impression that a different state of affairs exists after a person is dead, and that in such case this court or some other court has power to come in and interfere for the purpose of correcting any injustice or unfairness in his testamentary disposition of his property. This is not the fact. A person who could not be interfered with by any one in his lifetime as to the disposition of his property can, if mentally competent and free from undue influence, insure by his will virtually the same absolute immunity of that property from outside interference after his death. Probate of a will cannot be refused merely because the court considers that the will is absurd, unjust, unnatural, cruel, immoral, or improper, and that the testator was wicked or unjust. Prejudice or sympathy on the part of the surrogate counts for nothing. All that he has power to do is to carry out the expressed wishes of the testator, provided that the will be properly executed, and that the testator was mentally competent, unless it be clearly shown that the will does not express the free and untrammeled intention of the testator, but was procured through undue and overpowering influence of another or others. Seguine v. Seguine, *42 N. Y. 669.

John Hamilton, a retail milk dealer, died July 3, 1899, when about

49 years old, without issue, but leaving surviving him a widow to whom he had been married about 24 years, and a sister, from whom he had been estranged about 20 years, as his only heirs at law and next of kin. His property consisted of a tenement house in West Thirty-Sixth street, the equity in which is estimated as worth about $8,000, and personalty variously estimated at from $150 to $1,000,— apparently, nearer the lesser amount. He executed the paper writing now propounded as his will on November 9, 1898, whereby he gave all his real and personal property to one Mary Gibson, and appointed Mr. Jeroloman, his attorney, as executor. The probate of the will is now contested upon the usual grounds by decedent's widow and sister. The beneficiary was no relative or connection of the testator, but made his acquaintance and that of his wife five years or more before his death, and continued on good terms with the latter until early in 1896, when a difference arose because of Mrs. Hamilton's objections to her husband's attentions to Mrs. Gibson. It appears that the relations between Hamilton and his wife had not been at all cordial or friendly for a number of years before his death, and that the latter charges that since June, 1895, she had been treated by him with extreme cruelty and neglect. In January, 1898, she commenced an action against him for separation and support on the grounds above stated, in which bitter and acrimonious affidavits were filed on both sides; and in February of the same year Mrs. Hamilton left her husband's house, and never again lived with him. It would seem that Hamilton continued his acquaintance with Mrs. Gibson after the disagreement between his wife and herself, frequently visiting her at her various places of residence. About July, 1898, the decedent, who had prior thereto been a strong and vigorous man, had an attack of pneumonia, which soon after developed into consumption, in the end proving fatal; and after such attack he was unable to attend to business, and grew rapidly worse until he died, about a year later. In October, 1898, he had an unusually severe hemorrhage, and was advised by his physician to seek a warmer climate for the winter, which advice was not, however, followed. On November 9 he executed the paper propounded as his will, and about November 28 Mrs. Gibson retired from her position as saleswoman in a mercantile establishment, and came to live in Mr. Hamilton's flat, there being no other occupants. The contestants claim that before and after this time the relations of Hamilton and Mrs. Gibson were of a meretricious character, all of which charges are denied by Mrs. Gibson, who states that, as a friend, she went to live in Mr. Hamilton's apartment merely as his housekeeper and nurse during his illness. It is not necessary for the purpose of the decision of this case that I should pass upon the truth or falsity of these charges; for, even if true, they would not, standing alone, be proof of any undue influence. In re Rand's Will, 28 Misc. Rep. 467, 59 N. Y. Supp. 1082; In re James, 87 Hun, 57, 33 N. Y. Supp. 968; In re Mondorf's Will, 110 N. Y. 450, 18 N. E. 256. The will under consideration was executed by Mr. Hamilton at the office of his attorney, and witnessed by the latter's partner and managing clerk. There seems to be no doubt as to its proper execution, or as to the mental competency of the testator to make a will; and the

only question in the case is whether, upon the evidence submitted, the court would be justified in finding that the paper propounded for probate represents the free and untrammeled will of the deceased, or was the result of undue influence exercised upon him. I concede, as before intimated, that the will is such as may reasonably be considered unnatural and unjust, and also that the beneficiary and attorney named as executor stood in positions of quasi confidential relationship to the testator, and hence that the burden of proof is shifted upon them to give some reasonable explanation of its unnatural character, and of the fairness, honesty, and legality of the transaction by evidence outside of the execution of the instrument, and some proof that the nature of the act was well understood by the testator. Nesbit v. Lockman, 34 N. Y. 167; In re Budlong, 18 Civ. Proc. R. 18, 7 N. Y. Supp. 289. In my opinion, sufficient evidence of the required character has been given. The testator was, as is conceded, not of unsound mind, nor does it appear to me that his mind was even weak at or about the time of his death; and it is in evidence that he was a strong-minded man, very stubborn, and that he had been very hostile in his feelings towards his wife for a long time before the will was executed. In the action which she brought against him in 1898 for separation, in some of his affidavits in evidence herein he alleges that they had not been on good terms for 10 years; that his wife had a bad temper and a foul tongue; that she had three times had him arrested without good cause, and had insulted him and treated him unkindly for years; and that his life had been one of continual fault-finding, nagging, and insult. It is also in evidence that in a conversation with his friend, Mr. Todd, in the autumn of 1898, he stated that his wife had threatened to call on him, but that he did not wish to see her. These and other facts developed by the evidence would indicate how such a will came to be made, and that the testator fully understood what he was doing. It may here be stated that the decedent's widow, should this will be admitted to probate, will nevertheless receive, by reason of her dower right in the real estate, the same amount that she would have received had her husband died intestate, with the exception of her interest in the personalty, which the testimony shows to be of but trifling value. I can find nothing in the evidence to lead me to the belief that there was anything in the nature of a conspiracy between Mr. Hamilton's executor or any one else and Mrs. Gibson to exert any undue influence over the decedent, or that any such influence was so exerted. Nor do I detect any attempt to exercise such undue influence, or any proof of its having been exercised, by Mrs. Gibson. Whether the provision for her in the will was made out of gratitude and appreciation for her services as nurse and housekeeper, or for other less commendable reasons, makes no difference. The testimony, as I interpret it, shows that the testator hated and disliked his wife, and that, while in the full possession of his faculties, he coolly and with deliberate intent proceeded to disinherit her as far as legally possible. It is not for me, as before stated, to decide this case in accordance with my own views or those of the public as to the propriety of the testator's action. I can only decide that the will was, in my judgment, the free and untrammeled ex-

pression of the testator's own desire. Objections overruled. Submit for settlement proposed findings and decree admitting will to probate.

Probate decreed.