### In re COMSTOCK'S ESTATE.

*(Surrogate's Court, New York County.* August 3, 1889.)

WILLS—CAPACITY TO MAKE.
  Where the mental capacity of the testator is the question in the contest of a will, and the testimony of subscribing witnesses and others, apparently disinterested, who had opportunities for observing the condition of testator's mind, show that at the time of making her will she was rational, and it appears that the disposition made of the property was the natural result of her surroundings, and in accordance with her intentions previously and repeatedly announced, the will must be admitted to probate.

Application for admission to probate of a paper purporting to be the will of Marie Louise Comstock, deceased. Testator's next of kin contested its validity on the ground of mental incapacity of the maker.

*George Carleton Comstock,* for proponent. *A. J. A. Callaghan,* for contestants. *Strong & Cadwalader,* for St. Mary's Free Hospital. *Edward Jacobs,* for Sarah S. Reed. *Arnoux, Ritch & Woodford,* for Laura Barbaria, legatee.

RANSOM, S. The last few minutes of the argument have been devoted to a subject which has very little to do with the question to be decided in this proceeding. The comment of counsel on both sides upon this last subject is justified by the evidence as it is said to exist. I think it unfortunate, not for this case, but because of the tenderness which we all feel towards women and children, that there should have been any extended remarks upon this evidence, although the evidence was material and proper, and the witness testified, when she found that she must, by direction of the court, briefly and honestly; and, if it be true that she sinned, in the language of the Saviour of mankind, let those without sin cast a stone. It was not introduced in this case for the purpose of discrediting her testimony, as I understood it, at all. It was not referred to in argument for the purpose of discrediting her testimony, but only to make the point, which was a perfectly legitimate one, that that was probably the reason that Miss Comstock excluded her from the will in which she had theretofore included her; and Mr. Cockran has met the suggestion by a very pertinent inquiry, and I might agree with him if it were necessary for me to decide anything about it.

Now, in regard to the papers propounded as the last will of Miss Comstock, there is no difficulty in my mind about a proper disposition of the question. If we were without instruction which has come down to us for ages, I might say, upon this precise proposition, I might find it more difficult to dispose of the question since I have heard the very plausible argument of the contestant's counsel. But in the light of precedents which he referred to, which have been indorsed and are indorsed in every decision made by every court in this country, on the doctrine of those old cases, carried down to the present time, there cannot be any reasonable doubt in the mind of the surrogate, and it

seems to me in the mind of any person who has listened to this evidence, but that Miss Comstock, at the time she executed these papers, had capacity to execute a will.   Whether the capacity was great or small is not the inquiry. Whether the capacity then was as it had been for some years previous is not the inquiry.   Evidence of what the capacity was previously and subsequently is admissible as throwing light upon the question of her mental strength at the time she executed the paper.   And so the door has been opened very widely, and all objections by the proponent's counsel have been overruled, that the contestant might give all the evidence that exists, so that the surrogate should have a perfect understanding from that evidence of this lady's condition of mind, not only at the time she executed the paper, but at a prior and at a subsequent time.   The statute which controls us we are all very familiar with; and the rules and decisions under the statute, and even a higher and a better reason, if we needed to look for it, which may be said to be ingrained in the common sense of a man, require us to look to the subscribing witnesses to a testamentary paper as the most trustworthy source of information in regard to the then condition of the testator, and whether or not the act was free and voluntary and unrestrained.   In this proceeding the usual objections were filed.   I do not think that the fact that an objection is spread upon a paper charging undue influence, and then abandoned, is to be regarded with any surprise.   The objections filed are in the nature of a pleading, and they are for the purpose of presenting, as lawyers understand, the issue, and all the issues that may be inquired into.   And in this case Mr. Cockran has done what honest lawyers always do upon the investigation of the facts of the case. He has frankly stated to the court that the only issue under the evidence is one of mental capacity, and has abandoned the charge of undue influence; so that it is unnecessary for me to consider specially that the papers were procured by anybody's improper influence.   If it were, of course I agree at once with Mr. Cockran's frank statement that there is no evidence here that there was any influence practiced upon Miss Comstock to procure this will.   And I may say that I cannot see that there is any evidence from which it would be fair to infer, or even to suspect, that any influence—improper influence—had been exercised.   Proper influence, we understand, is legal.   A friend or a relative has a right to persuade a testator to leave a benefaction to him; but there is no evidence even of that.   Again, in the whole course of the proceeding, it appears that the wills are precisely in accordance with previously expressed testamentary intentions.   There is no doubt about that.   Miss Comstock had said to persons who testified—and their testimony must be regarded with full credit, and the fact is established that she had said—that it was her intention to dispose of her property as she has disposed of it.   And it does not seem to me unnatural that she should have so disposed of it, considering her surroundings and the way she accumulated her fortune.   It seems to me it was perfectly natural that she should prefer to bestow upon her intimate friends, and those who had been with her in the accumulation of this fortune, the benefits of its enjoyment, rather than that it should go to collateral relatives, who were second or third cousins, who were not even her intimate acquaintances.   The testimony of Mr. Docharty and other witnesses introduced by the contestant justifies the very careful inquiry by the kin of this lady into the *factum* of this will, and how it was procured; and the contest is one which should have been commenced, and should have been as carefully and as capably prosecuted, as it has been.   The result, to my mind, is as I have already intimated.   I had occasion, in a case some time ago, to examine the law very carefully, and it occurred to me that I might refer to some of those cases; but I think it unnecessary.   The law-books are full of precedents upon this question, which is whether Miss Comstock, at the time she executed these papers, had capacity to make a will, and whether the surrogate is satisfied, from all the evidence, beyond any reasonable doubt, that that is so; and I am satisfied

that she had such capacity. I might spend some time in referring to some items of evidence, letters of the decedent, and express my views, if they would be at all material, upon the suggestion that these letters evidence failing intellect, and that they are contradictory of each other. For the sake of the case, I am quite willing to concede that all that is true; but that does not establish such mental incapacity as should reject a testamentary paper. A great many witnesses were called by the proponent, and their testimony has had great influence upon me; notably Capt. Samuels, Mr. Brackett, and others, who had abundant opportunity to see this lady about the time these papers were executed, before that time, and subsequent to that time. They certainly appeared to be—and I have no doubt they are—disinterested witnesses; and they are unanimous in their testimony, in spite of the skillful cross-examination that they were subject to in their statement, that in any view, after a description of this lady's conduct and speech, that she seemed to them rational down to some considerable period of time after the execution of this codicil. Therefore I say that the papers must be admitted to probate.