1. WILLS—TESTAMENTARY CAPACITY—EXCESSIVE USE OF INTOXICANTS.

Testimony, in a proceeding to probate a will, that testatrix was addicted to the use of intoxicants in a liberal degree, where it does not appear that such use had permanently impaired her faculties so as to incapacitate her from attending to her household duties and the management of her business in an intelligent and capable manner, is not sufficient to establish lack of testamentary capacity, though at the time of the execution of the will her physical condition was impaired by her excesses.

2. SAME—UNDUE INFLUENCE.

The mere fact that testatrix appointed as executor of her will a person with whom she had, a short time before her death, entered into an improvident contract, does not show undue influence by such person, so as to invalidate the will, where it appears that the executor had not seen testatrix for 11 years, and that his attorneys, through whom the contract was consummated, did nothing improper.

Proceedings to probate the will of Anna Sutherland, deceased. Objections by Mrs. Hagan were filed, and, after hearing testimony, the will was admitted to probate.

Daniel Whitford (Allan McCulloh, Wm. C. Prime, and William H. Ford, of counsel), for proponents.

Everett V. Abbott (Albert Stickney, of counsel), for contestant.

VARNUM, S.   The greater part of the testimony in this case was taken before my predecessor, Judge ARNOLD, but the balance, by consent, before me, and the case was ably and at great length summed up before me.   Probate is asked for the will of Anna Sutherland, dated and executed April 3, 1897.   Objections have been filed on behalf of her daughter, Mrs. Hagan, on all the customary grounds, but upon the trial no serious attempt was made to deny the proper factum of the will, the contestant relying upon claims of testamentary incapacity and undue influence, the charge, in fact, being that her mother, through excessive indulgence in alcoholic beverages, and by reason of diseases resulting therefrom, was in such a state of mind and body as to be incapable of making a will, and especially susceptible to undue influence, which, it is claimed, was successfully exercised.   The facts as to the life of the testatrix here become important.   She first married, when about 18 years old, one Kimball, by whom she had only one child, a daughter.   When this child, the contestant herein, was 2 or 3 years old, Kimball obtained a divorce from his wife, and the child was taken away from her mother by him a year or so later, and was brought up by her father's relatives.   She never lived with her mother again, or had anything to do with her during her life, and apparently not only did the mother receive no daughterly affection or attention from her child, but she herself manifested little or no maternal affection for her daughter; and, in fact, it is in evidence that on one occasion, not long before her death, when her daughter called at her house, she was refused

admission by the mother's express orders. The testatrix, after the divorce in question, lived with her parents for some 18 or 20 years, when she married for her second husband one Sutherland, with whom she seems to have lived happily until his death, in June, 1893. Sundry prior wills of testatrix, admitted in evidence, show that in a will executed in 1889 she gave all her property to her second husband; that after his death, and in a will of June 17, 1893, she gave the contestant only $5,000, and the balance of her estate to children and relatives of Mr. Sutherland, to her then attorney, and to other strangers in blood. Evidence of testatrix's testamentary wishes are considered by the courts as having great weight on the question as to whether the making of a will was a free and independent act. Ewen v. Perrine, 5 Redf. Sur. 646. On April 3, 1897, the testatrix, when 53 years of age, made a new will, which is the one now propounded for probate. By it she gives to the contestant $4,000, to her stepdaughters (children of Sutherland) and other friends and relatives, including her attorney, Mr. Ward, legacies ranging from $1,000 to $7,000, and to Kate Fitzgerald and Mary Boyle, maidservants in her employ, $5,000 and $1,000, respectively. The residue is given to the respective legatees named, to be divided among them in the same proportions as the legacies bear to each other. Lewis V. Sone and Sidney Ward are named as executors. It will be seen that the provision in this will for the contestant does not vary largely from that made for her in the will of 1893, although the evidence shows that the property of the testatrix had been largely reduced in amount since that time. After the death of her second husband, Mrs. Sutherland resided at various places in the city of New York and elsewhere, and finally moved to a house in West End avenue, where she resided at the time of her death, which occurred on the 16th day of September, 1897. It appears from the evidence that the testatrix, after her husband's death, in 1893, was in a "run-down" condition; and was more or less ill thereafter until the time of her own death, suffering in 1893 and at times thereafter from gastritis, and later (1895) from cirrhosis of the liver, which continued until the time of her death, and also at times from multiple neuritis or its effects. She commenced to be seriously ill in August, 1897, and died in the following September. The evidence seems clearly to show that from at or about the time of her husband's death, in 1893, until her own death, in September, 1897, the testatrix lived chiefly alone with servants, estranged from her mother and the rest of her family, and that she certainly indulged liberally in alcoholic stimulants, at times was largely under their influence, and that the bodily ailments from which she died were considerably, if not entirely, caused by such overindulgence. But it seems to me from the testimony that there is nothing to show that she was not, during the greater part of the time, entirely in the possession of all of her faculties, quite able to attend to the affairs of her household and the management of her business in an intelligent and capable

manner, and especially at the time when the will under consideration was executed. I am of opinion that the impairment of her physical condition did not affect her testamentary capacity. Horn v. Pullman, 72 N. Y. 269. Even if she did use intoxicating liquors to excess, there seems to be no satisfactory evidence that such excessive use had affected her mind, or that she was so affected when her will was executed. Van Wyck v. Brasher, 81 N. Y. 260; Gardner v. Gardner, 22 Wend. 526; In re Johnson's Will, 7 Misc. Rep. 224, 27 N. Y. Supp. 649; In re Halbert's Will, 15 Misc. Rep. 309, 37 N. Y. Supp. 757; Peck v. Cary, 27 N. Y. 17; Lewis v. Jones, 50 Barb. 669. A dissipated person is not precluded from making a contract or executing a will, even though he be partly under influence of liquor when performing such acts. If fixed mental disease has resulted from such indulgence, or the person is so excited thereby as not to be master of himself, then only are his legal acts void. Less mental capacity is required to execute a will than a contract or a deed. The worst drunkards have times when they are sober, and have perfectly lucid intervals, when their acts are legal and valid. In re Halbert's Will, 15 Misc. Rep. 309, 37 N. Y. Supp. 757. There must be proof that at the time of the alleged act the testator's understanding was clouded, or his reason dethroned. Van Wyck v. Brasher, 81 N. Y. 260. The fact of habitual drunkenness raises no presumption that at the time the act was done the inebriate was intoxicated. Lewis v. Jones, 50 Barb. 669; 3 Hagg. Ecc. 574, 602, 616. I have listened with much interest to the argument of the learned counsel of the contestant, and have given careful attention to the able and ·exhaustive brief submitted on his side of the case, and the citations therein contained, and, in deference thereto, and to the refined distinctions as to the mental capacity made therein, I deem it proper to hold explicitly that the testatrix, at the time of the execution of the will under consideration, was in the possession of sound and disposing mind and memory, which were duly used by her in the testamentary act in question.

Having thus disposed of the question of testamentary capacity, it behooves me to consider carefully whether the will was executed under any undue influence. No question has been seriously raised as to any undue influence on the part of Mr. Sidney Ward, one of the legatees; and there is no proof worth consideration, in my judgment, as to any such influence on the part of the two maidservants who have received legacies. The intimation of the contestant, however, is that one Lewis Sone, not a legatee or devisee under the will, but merely one of the two executors named therein, has, either alone or in connivance with others, caused this will to be executed through some undue influence, and for his own benefit and advantage. This charge necessitates a reference to the fact appearing from the testimony that the testatrix had in some manner used up most of her available property, and found herself much embarrassed pecuniarily about 1895. She sought to raise funds, but her only asset was an interest in remainder in one undivided half part of the estate of her

brother Francis C. Fleming, subject to the life estate of her mother therein.    The other undivided half part of said residuary estate was owned by the said Lewis Sone, who had acquired the same under the terms of the will of Henry Fleming, also a brother of the testatrix, and who had been the friend and partner in business of said Francis C. Fleming, from whom the property originally came.    Naturally such an asset was not readily marketable to a stranger, and the evidence shows that, apparently fully appreciating the fact, looking out primarily for her own needs and comfort, and not caring much as to the ultimate disposition of her capital, the testatrix, as early as December, 1895, through her then attorneys, Messrs. Cannon & Atwater, approached Mr. Sone with reference to a loan from him to her upon the interest in question, which negotiations for money continued for a long time, largely through correspondence, in evidence, until finally, about May, 1896, an agreement was executed between Mr. Sone and the testatrix whereby, in consideration of a considerable payment in cash, certain large fixed annuities, etc., which it is not necessary to recite here in full, the testatrix conveyed to him her interest in remainder in said Fleming estate.    There is nothing, in my judgment, to suggest any fraud or unfairness or undue influence in the execution of the agreement referred to, but it is not within the jurisdiction of this court to pass on its validity.    The undue influence suggested by the contestant is based chiefly on the claim that Mr. Sone's appointment as executor was secured and forced through in order to prevent the taking of any action by her personal representatives to cancel and annul the agreement in question, which, owing to the death of the testatrix within a year thereafter, has proved to have been an undesirable one for her estate, and a profitable one for Mr. Sone.    All that I have to do with the question of undue influence is in the execution of the will, and as the testimony shows that Mr. Sone had not seen or had any personal communications with the testatrix on any subject since February, 1886,—more than 11 years prior to the execution of the will,—and I am satisfied that his attorneys took only such a course as was proper under the circumstances, I find that no undue influence was exercised over the testatrix in the execution of her will. If there be any fraud or unfairness about the agreement referred to, doubtless some appropriate remedy will be found by the contestant in some other court or proceeding.    I therefore admit the will to probate.    Submit findings of fact, conclusions of law, and decree.

Probate decreed.