## In re GIHON'S WILL.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. WILLS—MENTAL INCAPACITY.
   Evidence that textatrix, at time of making a will, was suffering from malnutrition and cancer, and that her sufferings could somewhat affect her judgment and will power, and that a cancerous condition often affects the blood, and the condition of the blood would affect the brain, is not sufficient to show mental incapacity to make a will, where it was not shown that the blood of deceased was in fact contaminated by cancerous poison.

2. SAME—UNDUE INFLUENCE.
   The facts that the husband and son of a testatrix were in a position to exert influence over her, and that changes from an earlier will were beneficial to them, do not justify the inference that such influence was actually exercised, as against an absent daughter.

3. SAME—EVIDENCE—HARMLESS ERROR.
   Refusal in a will contest to compel a physician to divulge what testatrix, a patient, had said to him regarding an operation, if error, was harmless, where the conversation was proved otherwise.

4. SAME.
   Refusal to compel a physician to answer whether, in his opinion, a cancerous condition was not a large factor in causing the death of a testatrix, was harmless, where he had stated he could not form an opinion as to the cause of death if he excluded matters of hearsay, and where the whole proof showed death was due largely to cancer.

Appeal from surrogate's court, Westchester county.

Contest by Elizabeth Remsen Le Roy Dale to the probate of the will of Caroline Remsen Gihon, deceased. There was a decree admitting the will to probate, and contestant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frederick H. Man, for appellant.
C. N. Bovee, Jr., for respondents executors.
F. B. Campbell, special guardian, for infant respondents.

WILLARD BARTLETT, J. This was a proceeding for the probate of a paper propounded as the will of Caroline Remsen Gihon, who was a resident of Westchester county, but died in the city of New York on June 15, 1898. The will was dated March 1, 1898, and was executed by Mrs. Gihon on that day in the office of Mr. Hamilton Odell, by whom it had been drawn pursuant to directions received by him from the testatrix, both personally and by letter. The instrument was witnessed by Mr. Hamilton Odell and by Mr. James H. Robertson, his managing clerk. Its main features are: (1) A gift of the house and land of the testatrix at Tarrytown, together with the household furniture and appointments, to the husband of the testatrix, William Gihon, and her son by her first marriage, Frederick G. Le Roy, for the life of the husband, and, upon the husband's death, absolutely to the son; (2) a bequest of an annuity of $4,000 to the husband for life; and (3) a bequest of one half the residuary estate absolutely to her son, Frederick G. Le Roy, and the other half to her executors, in trust to pay the income to Eliza-

beth Remsen Le Roy Dale, the daughter of the testatrix, during her life. Upon her death, the principal of this half is bequeathed to the daughter's children surviving her, in equal shares. If she leave no children, it is bequeathed to the son of the testatrix if he survive his sister, and otherwise to his issue him surviving. In case neither the son nor any of his issue survive Mrs. Dale, the half of the residuum in which she is to enjoy a life estate is bequeathed in equal shares to Anna Elizabeth Webb and Mary Phœnix Belknap, and to the surviving issue of either of them who may be dead at the time of the failure of the preceding bequests. The will names as executors William Gihon, the husband of the testatrix, Frederick G. Le Roy, her son, and her friend Haley Fiske. In addition to her house and land at Tarrytown, the testatrix appears to have owned personal property worth from $375,000 to $400,000 at the time of her death. There had been a prior will executed by Mrs. Gihon in 1888, modified by a codicil executed in 1892. In these instruments, as in the will of 1898, the husband, son, and daughter were made the principal beneficiaries, but the distribution of the property was more favorable to the daughter, who was then unmarried. Thus, the will of 1898 gave the husband $50,000 outright, devised the Tarrytown house to the daughter, and divided the remainder of the estate between the daughter and the son; while the codicil of 1892 gave the husband an annuity of $3,000 for life instead of $50,000 absolutely, and bequeathed to the son the seat purchased for him in the New York Stock Exchange by the testatrix, expressly because she had given the Tarrytown property to her daughter.

In 1894, Miss Elizabeth Remsen Le Roy, the daughter of the testatrix, became the third wife of Mr. Henry Dale. In the present contest of her mother's will, much reliance is placed upon the changes in the testamentary disposition of Mrs. Gihon's property from that previously made by her, as evidence that the testatrix had been subjected to undue influence antagonistic to the interests of her daughter. In support of this contention, we are also referred to the draft of a will prepared for Mrs. Gihon to execute in 1894, which was also somewhat more favorable to Mrs. Dale than the will of 1898. Grouping the seven objections to this will which have been filed in behalf of the contestant, we may consider (1) those relating to the execution of the instrument; (2) those relating to the testamentary capacity of Mrs. Gihon; and (3) those which allege that the will was procured by fraud, coercion, and undue influence.

1. There was no attempt to prove the allegation of the contestant that the paper propounded as her mother's last will and testament was not subscribed, published, and attested in conformity with the statute in such case made and provided. On the contrary, the proper execution of the will was clearly established by the testimony of both witnesses to the document, without contradiction.

2. The contestant failed to sustain the objections which deny the mental capacity of the testatrix to make a will on March 1, 1898. Indeed, it is to be observed that in his brief on the present appeal her counsel does not assert that Mrs. Gihon was then mentally incapable of making a will. He goes no further than to say that at

the date of the paper she was, and for a long time prior thereto had been, feeble, both in body and bind, by reason of disease. Neither the expert testimony nor any other evidence in the case would have warranted a finding that Mrs. Gihon was deficient in testamentary capacity. The proof does indicate, it is true, that the testatrix, at the time she made the will in question, was suffering from malnutrition and cancer, and there was opinion evidence to the effect that her sufferings from malnutrition could somewhat affect her judgment and will power. It was also testified by contestant's expert that a cancerous condition of the body often affects the blood, and that the condition of the blood, as thus affected, would affect the brain, after the cancer had been broken down and reabsorbed so as to pass through the system, but the same witness refused to say, from the symptoms stated in the hypothetical question put to him, that the blood of Mrs. Gihon was in fact contaminated by cancerous poison. It needs no argument to show that testamentary capacity is not destroyed by every malady which affects the mental faculties. No court, in my judgment, could be justified by the evidence in this record in affirming that Mrs. Gihon was not mentally capable of making the will which is before us. None of the lay witnesses characterized any of her acts as irrational, or described any conduct which could properly be thus characterized; nor did the contestant's expert, to whom I have referred, express the opinion that the testatrix lacked testamentary capacity. This part of the case against the will, therefore, has also completely failed.

3. The allegations of fraud, coercion, and undue influence are but little better sustained. The utmost that can fairly be regarded as established is that the husband and son of the testatrix were in a position to exert influence over her, and that the changes from the earlier will were beneficial to them. Mere proof of opportunity, however, and even of motive, to exert influence over the testatrix by her husband and son, does not, standing alone and of itself, justify the inference that such influence actually was exercised. Cudney v. Cudney, 68 N. Y. 152. Here, on the other hand, there was no proof that the testatrix was a person of weak intellect or easily influenced. Evidence was hardly needed to show that ordinarily the mind is affected to some extent by serious disease, and we may admit that the testatrix had become feebler than she formerly was, and more nervous, irritable, and unkind, as a consequence of the maladies from which she suffered, without finding any such weakness of character or purpose as would allow others to control her in the exercise of her testamentary bounty. Indeed, the irresistible impression left upon my mind, after reading through this voluminous appeal book, is that Mrs. Gihon knew just what she wanted to do with her property at the time she made the will in controversy, and that she did it uninfluenced by any consideration except a desire to treat her husband and children fairly and justly, in view of their situation and circumstances. There was nothing unfair, unjust, or unnatural in the disposition which Mrs. Gihon made of her estate by the will of 1898, in question here. It is true that its provisions were less favorable to the contestant than those which were formerly contemplated by the

testatrix. Since the will of 1888 and the codicil of 1892, however, the contestant had married a man whom Mrs. Gihon supposed to be very wealthy,—far richer than Mrs. Gihon herself. Mr. Gihon and Frederick J. Le Roy, on the other hand, appear to have been dependent upon the testatrix; and for this reason, if no other, it was only natural that they should be treated more generously, and that the daughter should receive less than her mother intended to leave her when the daughter was without the support of a rich husband. There is no evidence of any diminution of affection on the part of the testatrix towards her daughter, the contestant. Mrs. Gihon did not wholly like Mr. Dale, but this appears to have been due chiefly to his treatment of Mr. Gihon. Her reference to her daughter's estrangement, and to the insults to Mr. Gihon, which she proposed to resent, plainly related to what she supposed to be the result of Mr. Dale's influence and conduct, and implied no unfriendliness to Mrs. Dale herself. The letter of the mother to the daughter in regard to the contemplated operation, and asking Mrs. Dale to come to see her at the hospital, cannot be reconciled with any theory except that of the most affectionate relations between them.

The record contains many exceptions to rulings admitting or excluding evidence, but I deem it necessary to discuss only those to which special attention is called in the brief for the appellant. Shortly after the marriage of her daughter to Mr. Dale, the testatrix had a conversation with her physician, Dr. Richard Contant, concerning an operation which she had previously undergone at her house in New York City. The doctor was called by the contestant as a witness, and was asked to state what Mrs. Gihon had said to him about that operation. He declared that he considered the conversation confidential, and the surrogate sustained the proponent's objection to the question. The ruling seems to have been required by sections 834 and 836 of the Code of Civil Procedure; but, in any event, it was harmless to the appellant, for she proved otherwise what Mrs. Gihon had said about the operation, to the effect that she believed it to have been for cancer, though the doctors told her it was not. Another ruling of the surrogate sustained the objection of the proponents to a question to Dr. Contant as to whether, in his opinion, the cancerous condition in which he found Mrs. Gihon was not a large factor in causing her death. From no point of view can this ruling be regarded as injurious to the contestant, for the witness had already stated that, if he excluded from his mind all matters of hearsay, it was impossible for him to have an opinion as to the cause of Mrs. Gihon's death. Furthermore, the proof as a whole leaves no doubt that her death was largely due to cancerous disease, and the contestant is entitled to whatever benefit may be derivable from that fact. I agree with the learned surrogate of Westchester county that the case for the contestant may well be likened to "a structure the foundation of which is inference, its walls are suspicion, and covered with the roof of the imagination, but withal it is nothing but a shadowy phantom, without legal substance."

The decision below is right on the facts, it was reached without any substantial error of law, and it should be affirmed. All concur.