(112 App. Div. 370)

### In re BROWER'S WILL.

(Supreme Court, Appellate Division, Second Department. April 20, 1906.)

1. WILLS—TESTAMENTARY CAPACITY—AGE—PRESUMPTION.
    That testatrix was a woman 96 years of age when she made her will was insufficient in itself to raise a presumption against testatrix's capacity.
    [Ed. Note—For cases in point, see vol. 49, Cent. Dig. Wills, § 94.]

2. SAME—EVIDENCE.
    In a proceeding for probate of a will, evidence held sufficient to sustain a finding that testatrix had testamentary capacity when the will was executed.

3. EVIDENCE—CONCLUSIONS OF WITNESS—MENTAL CAPACITY.
    On an issue concerning testatrix's testamentary capacity at the time she made her will, it was error for the surrogate to exclude a question addressed to testatrix's agent, as to whether her acts, which the agent had remembered and testified to, impressed him as rational or irrational.
    [Ed. Note—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2242; vol. 49, Cent. Dig. Wills, §§ 113–119.]

4. WILLS—PROBATE PROCEEDINGS—EXCLUSION OF EVIDENCE—HARMLESS ERROR.
    Where, on an issue of testamentary capacity, the surrogate erroneously excluded a question addressed to testatrix's agent as to whether testatrix's acts impressed the agent as rational or irrational, and the acts referred to had been fully described by the agent, the error was not ground for reversal, under Code Civ. Proc. § 2545, prohibiting a reversal for an error of the surrogate in the admission of evidence which was not prejudicial.

Appeal from Surrogate's Court, Nassau County.

Application for the probate of the last will of Abigail Brower, deceased. From a surrogate's decree admitting the will to probate without contest, certain heirs appeal. Affirmed.

· Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Edwin T. Taliaferro, for appellant.

Charles H. Street (Leander B. Faber, on the brief), for respondents.

JENKS, J. I think that the decree was right. The testator was a woman aged 96, but these years in themselves raise no presumption against her capacity. Horn v. Pullman, 72 N. Y. 269. Four months before her death, at a meeting where only she, her regular physician, and an attorney who had but little previous acquaintance with her, were present, she, unaided, instructed the attorney as to the will, and was even acute enough to discuss the bearing of her advanced age upon her testamentary capacity. The will was duly executed before these gentlemen as attesting witnesses. It was a simple document, entirely natural in its benefactions. These two witnesses, together with a clergyman and an intimate woman friend, are clear in their testimony as to sanity and mental capacity. The opportunities of the woman friend especially to observe the mental powers of the testator were frequent, for she was a constant visitor. We find that some months after the execution of the will the testator stated to her sound (not fanciful) reasons why she had cut off a relative, and shrewd reasons why she did not make deposits in a certain bank. None of these witnesses is benefited by the will.

The contestants called three witnesses. One is a reputable lawyer, who had acted as agent for the testator in the collection of her rents, and who saw her for monthly accountings from January 22, 1904, until July 22, 1904. He testifies that within a few months—perhaps five, perhaps less than three—before her death he still continued to go over the accounts with her, or in her presence, but not with her alone, and that in this later period she did not seem to grasp them as before; that she said very little with reference to them. The witness had regarded her as the brightest woman of her years that he had ever known. Her physician testifies that death came from the general breaking up of old age, but that the testator had not reached the stage of mental senility before she died. Proof that after a long period of presumably satisfactory monthly accountings the testator was listless, indifferent, comparatively silent, or did not seem to grasp the accounts as before, is not to my mind cogent on the question of mental capacity to make a will at a near but earlier time. Mere physical debility might render one listless or indifferent in the matter of an account of rentals by a trusted agent, or in a like business routine, who nevertheless could and would rouse himself to the final important matter of testamentary disposition.

·· The second witness for the contestant was a physician who had attended the testator frequently while she lived in this borough, but not after 1901. He conversed with her as his patient only. He testifies that he found her weak, aged, and infirm, and generally ill abed; that her mental condition was very weak and her memory poor, and that he thought she was incapable of transacting business, and that it would be "pretty hard for her to remember the names of five, or any number, of her relatives." I comment that physical illness may go far to affect temporarily the mind; that this witness gained no knowledge of her

business ability beyond his mere professional visits as a physician; that the witness Miller testifies that three years after, and within a few weeks of death, testator expressed regret that she had not gone to live in the country earlier, as her health was much improved, and at that time she was up and about, walking in to the dinner table, conversing on general topics, explaining the cutting off of a relative in her will, and giving shrewd reasons for the nondeposit of her moneys. More-, over, the lawyer who acted as her agent only knew the testator after this physician had ceased to see her, and for several years had monthly accountings with her thereafter, in which she showed such capacity and understanding as to prompt him to pay the tribute that I have mentioned. And finally, she certainly in her instructions to her lawyer named not five, but many more, relatives, with discrimination as to her bounty to them.

The testimony of the third witness for the contestant deals only with certain indorsements. It is uncertain, vague, and unsatisfactory, and at most unimportant.

The learned surrogate erred in excluding the question addressed to the agent as to whether the acts of the testator, which he had remembered and testified to, impressed him as rational or irrational. De Witt v. Barly, 17 N. Y. 340; Wyse v. Wyse, 155 N. Y. 371, 49 N. E. 942. But the acts were capable of description, and had been fully described, and so the court was at most only deprived of the opinion of a lay witness based upon facts which were themselves before the court. In view of the rule that obtains upon review of the Surrogate's Court (section 2545, Code Civ. Proc.; Matter of Seagrist's Will, 1 App. Div. 615, 37 N. Y. Supp. 496, affirmed 153 N. Y. 682, 48 N. E. 1107), and of the evidence for the proponents, I think that the ruling was not reversible error.

The decree is affirmed, with costs. All concur.