### In re CARPENTER'S WILL.

(Surrogate's Court, Tompkins County. August 28, 1913.)

1. WILLS (§ 303*)—PROBATE—SUFFICIENCY OF EVIDENCE—EXECUTION.
   Testimony of the surviving subscribing witness to a will *held* sufficient to establish that all the necessary requirements to the valid execution of a will were complied with.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723; Dec. Dig. § 303.*]

2. WILLS (§ 289*)—EXECUTION—ASSUMPTION.
   The fact that a will was prepared by a lawyer who superintended its execution creates a slight presumption that the legal requirements were complied with, which, however, is weakened by his failure to sign as a witness.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

3. WITNESSES (§ 202*)—PRIVILEGED COMMUNICATIONS—ATTORNEY.
   A lawyer who prepares a will, superintends its execution, and signs as a subscribing witness is a competent witness in the probate of such will, but not if he does not sign as a witness.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 756, 757; Dec. Dig. § 202.*]

4. EVIDENCE (§ 568*)—PROBATE OF WILL—TESTAMENTARY CAPACITY—OPINIONS—WEIGHT.
   The weight to be given the conclusion of witnesses that acts and declarations of the deceased impressed them at the time as irrational depends upon the specific acts which they state, and if they do not justify that conclusion, it is no stronger than the acts mentioned, and of little value.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2392–2394; Dec. Dig. § 568.*]

5. WILLS (§§ 31, 50*)—CAPACITY—NATURE AND DEGREE IN GENERAL.
   Less mental capacity is required to execute a valid will than any other legal instrument, and one may make a valid will though possessing

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

less mental capacity than that necessary to make a valid deed or contract, or to transact business; but it is essential that the testator have sufficient capacity to comprehend clearly the condition of his property, his relation to the actual or natural objects of his bounty, and the scope and bearing of the provisions of his will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 66–68, 96–100; Dec. Dig. §§ 31, 50.*]

6. WILLS (§ 32*)—CAPACITY—IMPAIRMENT OF MEMORY.

Impairment of the memory of a testator is generally not a ground for rejecting a will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 69; Dec. Dig. § 32.*]

7. WILLS (§ 52*)—CAPACITY—PRESUMPTIONS.

No presumption of incapacity to make a will arises because testator is advanced in years.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. § 52.*]

8. WILLS (§ 55*)—CAPACITY—DELUSIONS.

In considering the weight to be given to testimony as to testator's delusions, based on statements of the deceased, the normal condition of deceased should be shown, and very little light is thrown on his mental condition by the recital of isolated and unexplained acts or declarations.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

9. WILLS (§ 38*)—CAPACITY—DELUSIONS.

Delusions will not defeat a will unless they enter into the testamentary act.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 78–81; Dec. Dig. § 38.*]

10. WILLS (§ 31*)—CAPACITY—SLIGHT DELUSIONS.

Forgetfulness and slight delusions do not establish lack of capacity to made a will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 66–68; Dec. Dig. § 31.*]

11. WILLS (§ 55*)—CAPACITY—EVIDENCE—ABILITY TO TRANSACT BUSINESS.

Ability to transact ordinary business properly is strong evidence of testamentary capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

12. WILLS (§ 1*)—RIGHT OF TESTAMENTARY DISPOSITION.

The right to dispose of property by will is an incident of ownership, the law only requiring that the testator be of sound mind, of lawful age, and not unduly influenced or restrained.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1; Dec. Dig. § 1.*]

13. WILLS (§ 82*)—DISPOSITION—RELATIVES.

There is no obligation on the part of a testator to leave his property to relatives.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 203; Dec. Dig. § 82.*]

14. WILLS (§ 52*)—CAPACITY—PRESUMPTION.

The fact that some relatives are excluded by testator, if sufficient reason exists therefor, furnishes a reasonable basis for a strong presumption of capacity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. § 52.*]

15. WILLS (§ 1*)—CAPACITY—MEASURE.

 The tendency of the courts is to favor the untrammeled and uninfluenced disposition of property by will.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1; Dec. Dig. § 1.*]

16. WILLS (§ 55*)—MENTAL CAPACITY—EVIDENCE.

 Evidence on contested probate proceedings *held* not to show that testatrix was mentally incompetent to make a will.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. § 55.*]

Application for the probate of the will of Sarah Jane Carpenter, contested by Joseph Poyer and Carrie Fish. Will admitted to probate.

David M. Dean, of Ithaca, for proponent.
J. D. Collins, of Ithaca, for Jay Poyer, a legatee.
James L. Baker, of Ithaca, Special Guardian for John Everhart.
Cobb, Cobb, McAllister & Feinberg, of Ithaca, for contestants.

SWEETLAND, S. The deceased died January 4, 1913, leaving a will dated March 14, 1911. She left her surviving, John Drake, a son, Jay Poyer and Joseph Poyer, grandsons, Carrie Fish, a granddaughter, and John Everhart, a great-grandson, who is under the age of 21 years, and has been represented by a special guardian in this proceeding. Joseph Poyer and Carrie Fish, children of a deceased daughter, contest the will, alleging the testatrix to have been of unsound mind at the time of the execution of the will, and not of sufficient understanding to execute a valid will. The will is typewritten, prepared by a lawyer, containing a regular attestation clause, duly signed by the testatrix and the two attesting witnesses, one of whom died prior to the death of the testatrix. The case was sharply contested, the contestants producing 23 witnesses, and the proponents calling 14 witnesses, the testimony, exclusive of exhibits, covering 431 typewritten pages, and the exhibits are numerous and voluminous.

[1] Mr. Davis, the surviving subscribing witness, a business man of experience, judged the age of the testatrix to have been about 60 years at the time of making the will, basing his judgment on her personal appearance, while the evidence of the contestants placed her age at about 85 at the time of making the will. Mr. Davis' testimony as to the execution of the will was full and complete. He testified that Mrs. Carpenter came to his store "some weeks before" the execution of the will, and requested him to act as a witness to her will at some time in the future. And on the day of the execution of the will in question she again called at his store, and requested him to act as a witness to her will. His language is, "She told me it would be that day, and to be there at the store so as to be ready," and later in the day he was called to the lawyer's office, where the will was being prepared, and was there signed by Mrs. Carpenter and the two witnesses. She had been coming to Mr. Davis' store and trading with him for a period of from 12 to 15 years; her visits lasting perhaps 10 to 15 minutes. Generally on those occasions he had conversations with her. "It would be about business, she would ask the prices or whatever she wanted."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On this long acquaintance, business transactions, conversations, and the occurrences at the signing of the will, he based his judgment that she was competent to make a will at the time in question, and not under restraint. She came alone, and was alone when she spoke to Mr. Davis on the two occasions about his acting as a witness to her will. His testimony establishes that all the necessary requirements essential to the valid execution of a will were complied with, and that she was of sound mind and not under restraint, and competent to make a will.

He testified that he saw the other subscribing witness sign his name as a witness to said will, and additional evidence was given by other qualified witnesses, establishing the genuineness of the signatures of the testatrix and of the deceased subscribing witness.

[2-4] The fact that the will was prepared by a lawyer, who superintended the execution of it, creates a slight presumption that the legal requirements were complied with, but that presumption is weakened by the failure of the lawyer to sign as a witness. A lawyer who prepares a will and superintends its execution becomes a competent witness on the probate of the will if he signs as a subscribing witness. His testimony may be highly important, but may be excluded if he does not sign as a witness to the will. Matter of Cunnion, 201 N. Y. 123, 94 N. E. 648, Ann. Cas. 1912A, 834, citing sections 835 and 836 of the Code of Civil Procedure. His failure to sign may enable a contestant to argue that his testimony might be unfavorable to the due execution of the will. The strength of such argument depends on the circumstances of each particular case.

There is no evidence of undue influence, and the formal execution of the will was so clearly established that the only remaining question is the competency of the testatrix at that time.

The evidence produced by the contestants is in the nature of the usual evidence produced on the contest of the will of a feeble old woman, and no useful purpose is served by going much into the unpleasant details brought out by the contestants, the force of which, in many instances, was materially weakened by the explanatory evidence of the proponent.

[5] The contestants produced witnesses who testified to various acts and declarations of the deceased, which impressed them at the time as irrational, among which were that she said she owned all the land in sight; that she had a large amount of money; that she had money and houses in Ithaca; and that she owned iron works, all of which were untrue; she talked of marrying; that she wished to marry; that she quarreled with her son, grandson, and others; at times she failed to recognize acquaintances, and various other acts which the contestants considered important to the establishment of their contention. The weight to be given the conclusion of the witnesses to the effect that the acts and declarations of the decedent impressed them at the time as irrational is dependent upon the specific acts which they stated. If such acts do not justify that conclusion, the conclusion is no stronger than the acts mentioned, and is of little value. American Seamen's Friend Society v. Hopper, 33 N. Y. 641;

Miller v. Miller, 150 App. Div. 611, 135 N. Y. Supp. 773; Matter of Gedney (Sur.) 142 N. Y. Supp. 157.

The proponent produced witnesses who described the acts and declarations of the decedent observed by them, and answer that they impressed them as rational at the time. She managed her farm, bought her household supplies, took receipts for payments made by her, computed the prices of articles bought and sold; sold her produce, drew milk to the milk station with the horse, attended social gatherings in her neighborhood, repaired fences, cared for the stock and farm. She was the successful party in a justice court action tried in her neighborhood, wherein she was cross-examined by the district attorney of the county.

The contestants offered in evidence the petition, affidavits, and notice of application for a commission in a proceeding instituted by Joseph Poyer and Carrie Fish, the contestants, for the appointment of a committee of the person and property of said Sarah Jane Carpenter, copies of which were served on her on the 22d day of February, 1911, some time prior to the execution of the will in question. Thereafter an order was granted that a commission issue to inquire into the competency of said Sarah Jane Carpenter, at which stage the proceeding was dropped. The papers were admitted in evidence for the purpose of showing that the proceeding was instituted, and who were the moving parties, but excluded as bearing upon the question of competency.

About six years prior to the execution of the will, two physicians examined the testatrix in what was apparently a lunacy proceeding, but did not file a report, and the matter there ended. Those physicians were called as witnesses by the contestants, and expressed the opinion that Mrs. Carpenter was of unsound mind at the time of the execution of the will.

Two other physicians were sworn for the proponent, both having been, and one still acting, on the staff of the Willard State Hospital, who in response to the hypothetical question put by the proponent pronounced her of sound mind at the date of making the will. There was evidence to the effect that Mrs. Carpenter had improved in both physical and mental condition since the time of the supposed examination in lunacy above referred to, which would be probable in the opinion of the medical experts produced by the proponent.

It is a suggestive fact that, although Mrs. Carpenter may have boasted of her wealth and possessions, she never attempted or indicated by any act that she believed or was influenced by such statements or beliefs. Assuming he did say she owned all the land in sight, she did not attempt to exercise any control over the lands of her neighbors, but did repair the line fences, indicating that she clearly recognized the limits of her own possessions and the rights of others. On one occasion she attempted to recover butter belonging to her, which had been sold by her son, which she claimed was sold without her consent. The fact that she was the successful party in the lawsuit indicates some local recognition of her mental capacity, and indicates ability to transact business. She had been married twice, but no presumption of incapacity arises from the fact that she talked of marriage or contem-

plated marriage. She was an active, thrifty woman, sadly deficient in refinement, and it appears for years back, when her mental capacity was unquestioned, she frequently indulged in violent and profane language, and was accustomed to swearing in her conversation, as well as engaging in frequent quarrels with members of her family, which disputes apparently, for the most part, were accepted as a matter of course by both parties, and evidently left little resentment or bitterness. Consequently such language does not establish mental incapacity, in the latter part of her life, as no change of conduct is shown.

[6] It is a suggestive fact that one of the medical experts for the contestants testified Mrs. Carpenter did not have sufficient capacity to make a will, but that she was capable of making a contract, such expert evidently laboring under the erroneous impression that to make a valid will requires greater capacity on the part of the testatrix than is required to execute a contract, not recognizing the well-established legal principle, "Less mental capacity is required to execute a valid will than any other legal instrument." Matter of Halbert, 15 Misc. Rep. 308–310, 37 N. Y. Supp. 757. To the same effect, Matter of Seagrist, 1 App. Div. 615, 37 N. Y. Supp. 496; Matter of Armstrong, 55 Misc. Rep. 487, 106 N. Y. Supp. 671; Matter of Browning, 80 Misc. Rep. 619, 142 N. Y. Supp. 683.

Evidence was received as to the testatrix's condition for some time prior to making the will, and also subsequent, as reflecting on her condition at the time of the execution of her will.

The leading case (Delafield v. Parish, 25 N. Y. 9) lays down the rule in probate cases, which has been many times cited with approval, as follows:

"It is essential that the testator has sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were, or should, or might have been, the objects of his bounty, and the scope and bearing of the provisions of his will. He must, in the language of the cases, have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them. A testator, who has sufficient mental power to do these things is, within the meaning and intent of the statute of wills, a person of sound mind and memory, and is competent to dispose of his estate by will."

The question is not as to the justness or reasonableness of the will, but under the above rule the question is, Was this will the free act of a competent person, duly executed? Perhaps a better will could have been made, perhaps she could have disposed of her property more wisely, but the will must be admitted to probate if Mrs. Carpenter was competent to make a will. Matter of Mondorf, 110 N. Y. 456, 18 N. E. 256.

It is difficult to measure from the testimony of witnesses the exact degree of intelligence possessed by a testator. The vast volume of adjudicated cases furnishes the law, but each case rests on its particular facts. There are countless degrees of human intelligence, and the difficulty of applying the legal rule to the facts presented in the various cases is recognized by the courts and profession, which is well stated by Lord Cranworth in Boyse v. Rossborough, 6 H. L. C. 45:

"There is no difficulty in the case of a raving madman or a driveling idiot in saying that he is not a person capable of disposing of property, but between such an extreme case and that of a man of perfectly sound and vigorous understanding, there is every stage of intellect, every degree of mental capacity. There is no possibility of mistaking midnight from noon, but at what precise moment twilight becomes darkness is hard to determine."

One may make a valid will, though possessing less capacity than necessary to make a valid deed or contract. Stewart v. Lispenard, 26 Wend. 255; Matter of Seagrist, 1 App. Div. 615, 37 N. Y. Supp. 496; Matter of Halbert, 15 Misc. Rep. 308–310, 37 N. Y. Supp. 757; Matter of Sutherland, 28 Misc. Rep. 424, 59 N. Y. Supp. 989. One may not have capacity to transact business and yet make a valid will (1 Underhill on Wills, 118; Matter of Seagrist, 1 App. Div. 615, 37 N. Y. Supp. 496), or to make a valid gift (Clarke v. Sawyer, 3 Sandf. Ch. 351; Matter of Browning, 80 Misc. Rep. 619, 142 N. Y. Supp. 683). Mere mental weakness does not prevent one from making a valid will, unless the mind was incapable when active and uninfluenced. It was said in Newhouse v. Godwin, 17 Barb. 236, "The weak have the same rights with the prudent or strong minded to dispose of their property." Horn v. Pullman, 72 N. Y. 269.

[7] Impairment of memory of testator is generally not a ground for rejecting a will. Matter of McGraw, 9 App. Div. 372, 41 N. Y. Supp. 481; Matter of Gihon, 44 App. Div. 621, 60 N. Y. Supp. 65; Id., 163 N. Y. 595, 57 N. E. 1110; Children's Aid Society v. Loveridge, 70 N. Y. 387. The inquiry here is limited to the question, Had she the capacity to make a will under the statutes of the state of New York? Not whether capacity was great or little. Matter of Comstock (Sur.) 7 N. Y. Supp. 334.

[8] No presumption of incapacity arises because the testatrix is a person of advanced years. Creely v. Ostrander, 3 Bradf. Sur. 107. In the case, Matter of Brower, 112 App. Div. 370, 98 N. Y. Supp. 438, the will of a woman 96 years of age was sustained upon conflicting testimony. Horn v. Pullman, 72 N. Y. 269. The power to will property—

"gives encouragement to industry; it stimulates accumulation; it furnishes new motives to the love of the parent and increases the strength of paternal authority; it adds new incentives to obedience to the child, and provides additional assurance against his misconduct or ingratitude. By extending the power of the present generation over the next, it enables old age to command kindness and respect, and strengthen the ties which bind it to youth." Deering v. Adams, 37 Me. 264, 269; Campbell v. Campbell, 130 Ill. 466, 22 N. E. 620, 6 L. R. A. 167.

It has been truly said:

"Old age is solitary, and often the only way in which an old person can command the attention to his infirmities that they merit is the right of disposition of his property by will."

Old age alone does not deprive one of the capacity to make a will, but on the contrary, is a reason for protection. Maverick v. Reynolds, 2 Bradf. Sur. 360; Van Alst v. Hunter, 5 Johns. Ch. 148.

"No man can live so long as to be legally incapable by mere lapse of years from ordering the disposition which shall after his death be made of his estate." Townsend v. Bogart, 5 Redf. Sur. 93, 105; Matter of Henry, 18 Misc. Rep. 149, 41 N. Y. Supp. 1096; Jessup's Surr. Pr. (4th Ed.) 357, 358.

[9] In considering the weight to be given to the testimony of contestants' witnesses as to delusions, which they described, based on statements of the deceased, the normal condition of the deceased should be shown. But very little light is thrown on the mental condition of a person by the recital of isolated and unexplained acts or declarations. If we accept the evidence of the contestants' witnesses as to the delusions of the testatrix, which they claim to have observed, without qualification or explanation, such delusions are not sufficient to defeat the will. The boastful claim that she owned all the land in sight, and exaggerated statements as to her wealth, seems to have in no way affected her acts or conduct. She was uninfluenced by them. She continued on in the same frugal way, but did not attempt to use or take property of others, nor did she live as one might expect her to live if she believed she had great wealth. There is no evidence of her embarking in speculation, nor giving away her property, and nothing in her conduct indicated that she believed she had large wealth. There is no evidence showing the testamentary disposition of her property was in any way affected by such delusions. Such delusions did not in any way enter into the disposition of her property. There is no evidence to show that any delusions or erroneous belief influenced her to make any legacy by her will.

[10] The authorities are uniform and the law well established that, unless the delusion enters into the testamentary act, its existence will not defeat the will. Matter of Lapham, 19 Misc. Rep. 71, 44 N. Y. Supp. 90; Matter of Jones, 5 Misc. Rep. 199, 25 N. Y. Supp. 109; Coit v. Patchen, 77 N. Y. 533; Matter of Gannon, 2 Misc. Rep. 330, 21 N. Y. Supp. 960; 25 Am. & Eng. Ency. of Law, 983; Matter of White, 121 N. Y. 406, 24 N. E. 935. In Roche v. Nason, 105 App. Div. 256, 96 N. Y. Supp. 565, affirmed 185 N. Y. 128, 77 N. E. 1007, it was held that the testator may have an insane delusion and yet be able to make a valid will.

[11] Forgetfulness and slight delusions do not establish lack of capacity to make a will. Children's Aid Society v. Loveridge, 70 N. Y. 387; Redfield's Surr. Pr. 178.

[12] Ability to transact ordinary business properly is strong evidence of testamentary capacity. Matter of Birdsall (Sur.) 13 N. Y. Supp. 421.

[13] We recognize that the right to dispose of property by will is an incident of ownership. It facilitates the settlement of estates, and indicates that the testator has considered the time when his property and possessions must pass to others. The reason actuating a testator, in disposing of property by will, may be known only to himself. Testamentary dispositions which may appear strange and unaccountable would, in many instances, be recognized as reasonable and just if the facts actuating the testator were known. The law only requires the testator to be of sound mind, of lawful age, and not unduly influenced or restrained. Only a moderate degree of capacity is required.

[14, 15] There is no obligation on the part of the testator to leave his property to relatives. Dobie v. Armstrong, 160 N. Y. 584, 55 N. E. 302. The fact that some relatives are excluded by the testatrix from sharing in her property, in this case, does not render her will in-

valid, but on the contrary, if sufficient reason exists therefor, does furnish a reasonable basis for a strong presumption of capacity. The property belonged to her. She had acquired and retained it. She was able to acquire and keep property, why not able to dispose of it by will? She was, by means of her will, able to reward those she preferred, and to punish those who had offended her.

[16] There is an unconscious tendency on the part of the public to suppose the highest degree of intelligence necessary in order to make a valid will, but such ought not to be the law, and is not. While the courts have to some degree departed from the very liberal view in Stewart v. Lispenard, 26 Wend. 255, yet the tendency of the present-day decisions is to favor the untrammeled and uninfluenced disposition of property by will. Matter of Murphy, 41 App. Div. 156, 58 N. Y. Supp. 450.

So far as appears from the evidence, Mrs. Carpenter did not have a prior will, and the will in question was only made after the very persons who are now contesting this will instituted proceedings to have her property taken from her, and she declared an incompetent. That proceeding failed, and the testatrix manifested a natural resentment, to be expected from a person of her disposition and situation, by cutting off from the benefits of her estate and property those two grandchildren who instituted the proceeding. Surely here was a motive for the act and a reason for her doing as she did in making this will. She evidently resented this assault on her competency, and punished those who instituted the proceeding. She doubtless regarded them as unkind, unnatural, and grasping. It seems she was proud of her property. It was dear to her. She did what most competent persons would do under similar circumstances, and there is nothing in the entire case as presented that will justify rejecting probate of the will. The acts of this pitiful old woman indicate a grasp of the situation, a knowledge of her property and her relatives, and a disposition on her part to give her property to those of her descendants who had not turned against her, and to punish those who attempted to take from her her prized possessions.

A decree may be drawn admitting the will to probate.